The Waverly National Bank *vs.* Mary A. Halsey and others.

Where debtors, immediately before making an assignment for the benefit of creditors, bought merchandise which they did not intend to pay for, but which they sold on credit, and assigned the debt owing for the price to the assignee; and at the time of making the assignment retained a large amount of money from the assignee, for their own use; and allowed moneys to be retained by clerks, fraudulently, either for their own use or for the benefit of the assignors; *Held* that these facts, unexplained by the debtors, were amply sufficient to warrant a finding that the assignors were actuated by a fraudulent intent in making the assignment; and that in the absence of any proof explaining the presumption of fraud arising from such acts, it was the duty of the court below to have so found.

APPEAL from a judgment of the special term, dismissing the plaintiff's complaint.

The action was tried before a justice of this court, at the February special term, 1868, without a jury.

On the trial the justice found the following facts: 1st. That the plaintiff is a corporation under the laws of the United States, and of this State. 2d. That on May 11, 1866, the plaintiff recovered a judgment in this court against Mary A. Halsey and Oscar P. Northum, two of the defendants, for $20,793.69, which judgment was recovered upon the drafts mentioned in the complaint, and was docketed, as stated in the complaint; that execution upon such judgment was issued to the sheriff of the city and county of New York, and was returned unsatisfied. 3d. That by an assignment in writing, dated October 30, 1865, and acknowledged October 31, 1865, the said Mary A. Halsey and Oscar P. Northum assigned over to the defendant Albert L. DeCamp all their property in trust to pay, 1. The expenses of the execution of the trust. 2. Certain of their debts as copartners in full. 3. All their debts as copartners, *pro rata*, and, 4. All their individual debts. That on the 31st day of October, 1865, they filed an inventory of their property, which purported to have been made by Oscar P. Northum, one of such assignors.

4th. That at the time of the said assignment, and for several years prior thereto, the said Mary A. Halsey and Oscar P. Northum were copartners in business, under the firm name of "Halsey & Northum," transacting business as produce commission merchants in said city; that as such copartners the said assignors, at the time of the said assignment, had a large amount of money which was not then, and has not since been, delivered to their said assignee, and was not mentioned in the inventory filed by them, and which they intended fraudulently to conceal, and did fraudulently conceal, both from their creditors and their assignee; and that the money so concealed was the result of collections made in contemplation of the assignment; and that the possession of the money was attempted to be concealed, a portion of it by false entries in the books of the assignors, and a portion of it by being put or left in the hands of third parties, upon secret trusts for the use of the assignors. 5th. That a few days before the assignment the assignors fraudulently bought merchandise to a considerable amount on credit, which they did not intend to pay, and never have paid, for; that the property so fraudulently purchased was immediately sold by them to a third party without their receiving payment therefor, and the debt owing to them for the price thereof was assigned over by them to their assignee by said general assignment, with their other assets, which debt was embraced in the said inventory filed by them. 6th. That at the time and immediately before the said assignment, one Tarbox was the book-keeper of said assignors; that as such he received of moneys belonging to them from one James Dill, the sum of $1062.50, which they (being at the time contemplating such assignment) fraudulently allowed him to retain, and charge to himself on their books; and the said Tarbox did, pursuant to such fraudulent direction, retain the said amount and charge himself therewith, he being at the time insolvent. 7th. That at and immediately before the

assignment one James Wickham was one of the employees of the said assignors, as salesman. ` That as such employee he had collected of the moneys of the assignors within a few days before the assignment, and while the assignors were contemplating the same, the sum of $4431.39, which money the said assignors fraudulently allowed the said Wickham to retain, either for himself or in secret trust for their benefit, and charged the same to him upon their books, and embraced the debt against him in their inventory as part of their assets, the said Wickham being insolvent at the time. These frauds, in the aggregate, amounted to over $30,000. 8th. That DeCamp, the assignee, accepted the said assignment on the 31st day of October, 1865. That he had no knowledge or notice of the fraudulent intent of the assignors, but accepted the same in good faith. 9th. That after the said assignment the books of account and· all the visible assets assigned were left by DeCamp in the place of business occupied by the said assignors at the date of said assignment, and the said Tarbox was continued by said DeCamp as bookkeeper in charge of said books, until about the first day of January, 1868. To the conclusion of the presiding justice, that the defendant DeCamp had no knowledge of the fraudulent intent of the assignors, the plaintiff's counsel duly excepted; also to the conclusion that DeCamp, the assignee, accepted the assignment in good faith; and to the conclusion that the assignment was delivered on the 31st of October, 1865.

The presiding justice found the following conclusions of law : 1st. That the said assignment was valid. 2d. That the same was not made with intent to defraud creditors. 3d. That the complaint in this action must be dismissed. To each of which conclusions the plaintiff's counsel duly excepted.

Judgment having been entered upon such decision, in favor of the defendants, the plaintiffs brought this appeal.

*Wm. M. Tweed, Jr.,* and *Nelson Smith,* for the appellants.

I. Upon the evidence and facts found by the court, the assignment was clearly fraudulent and void, and the court erred in dismissing the plaintiff's complaint. (1.) It is provided by 2 Revised Statutes, 137, section 1, that "every conveyance or assignment in writing or otherwise, of any estate or interest in lands, or in any goods or things in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents or profits thereof, made with the intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond and other evidence of debt, given, suit commenced, decree or judgment suffered, with the like intent, as against the persons so hindered, delayed or defrauded, shall be void." (3 *R. S. p.* 224, § 1, *3d ed.*) (2.) It is the *intent* of the assignor by which the assignment is to stand or fall; honesty of purpose of the assignee has nothing to do with the question. (*Wilson* v. *Forsyth,* 24 *Barb.* 105–120.) The assignment must be free from all suspicion, and there must be an actual *bona fide* continued change of possession. (*Per Clerke, J., Wilson* v. *Ferguson,* 10 *How. Pr.* 175–180.) (3.) The acts of the assignors while in contemplation of making an assignment, are evidence upon the question of fraudulent intent. (*Per Balcom, J., Peck* v. *Crouse,* 46 *Barb.* 151–157. *Vance* v. *Phillips,* 6 *Hill,* 433. *Wilson* v. *Forsyth,* 24 *Barb.* 125. *Waterbury* v. *Sturtevant,* 18 *Wend.* 353.) Contemporaneous fraudulent acts are also admissible upon the question of intent. (*Angrave* v. *Stone,* 45 *Barb.* 35.) In this case a fraud occurring three months before the assignment, was held admissible, by the general term in this district. Contemporaneous frauds are admissible in evidence, upon the theory that all of the fraudulent acts of the assignors which they have in contemplation constitute but one general scheme of fraud; and that an assignment in contempla-

tion while such fraudulent acts are being perpetrated, forms part of the scheme, and when made, is a hindrance to creditors in attacking the other fraudulent acts of the assignors that immediately precede it; and is calculated to deter any such attack. On this principle, a mortgage upon personal property, executed with intent to deter creditors from attacking some other fraudulent act of the mortgagor, is fraudulent, though executed for a valuable consideration, or to secure an honest debt. (*Dwelly* v. *Van Houghton*, 4 *N. Y. Leg. Ob.* 110. *Wilson* v. *Ferguson*, 10 *How. Pr.* 175.) Considerable latitude is allowed in proving contemporaneous fraudulent acts and circumstances. (*Hubbard* v. *Briggs*, 31 *N. Y. Rep.* 538. *Booth* v. *Bunce*, 33 *id.* 139.) (4.) The badges of fraud or fraudulent acts of assignors committed while contemplating the assignment in question, and with the view of making it, are divisible into three distinct classes. Under the first of such classes we embrace the fraudulent purchase by the assignors of the bill of butter of Miller and others, on the 27th day of October, 1865, three days before the assignment, not intending to pay for it, and the sale the next day of this butter to Redfield, and the assignment of the claim for the butter against him to the assignee, to pay preferred creditors. This clearly shows a fraudulent scheme to accumulate a fund with which to prefer creditors. The assignors, the day before the purchase of this butter, closed their account with the Merchants' Exchange National Bank, where they kept their deposits, withdrew their balance, and were at the time, the court found, contemplating this assignment. The fruits of that fraud were carried into the assignment by actually putting the claim arising on the sale by them of this butter into their assignee's hands, with the direction to pay it to preferred creditors. This must necessarily taint the assignment itself with such fraud, and render it void. *Kennedy* v. *Thorp*, (3 *Abb. Pr. N. S.* 131,) where it was decided by

the common pleas general term that such a fraud rendered, the assignment void; Judge Cardozo having so held at the trial of that case, and Judge Brady writing the opinion at the general term. (5.) Under the second of which classes we embrace the collection and retention by the assignors of a large amount of money which they had at the time of the assignment, and which was not mentioned in the inventory nor delivered to the assignee, and which, as the justice at special term found, the assignors intended fraudulently to conceal, and did fraudulently conceal, both from their creditors and their assignee, and that the possession of such moneys was attempted to be concealed by false entries in the books of the assignors, and a portion of it by being left in the hands of third parties on a secret trust for the use of the assignors, and that the assignors intended to keep such moneys, both from their creditors and assignee, for their own benefit. These moneys amounted to about $29,000. The fraudulent retention of these moneys by the assignors, for their own benefit, clearly renders the assignment fraudulent and void. It is provided by 2 Revised Statutes, 136, section 5, (*5th ed.* 222,) that "every sale made by a vendor of goods and chattels, in his possession or under his control, and every assignment of goods and chattels, by way of mortgage or security, or upon any condition whatever, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold, mortgaged or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor, and shall be conclusive evidence of fraud, unless it shall be made to appear, on the part of the persons claiming under such sale or assignment, that the same was made in good faith, and without any intent to defraud such creditors or purchasers." Money is goods and chattels; so treated in law; and may be levied upon by virtue of an execution from a justice's court, running

against goods and chattels only. (*Handy* v. *Dobbin*, 12 *John*. 219, 220. 1 *Cranch*, 133.) So are bank bills regarded as goods and chattels. (*Allen* v. *Sewall*, 2 *Wend*. 327.) The sale or assignment of personal property, unless accompanied by delivery and followed by continued change of possession, is, *prima facie*, fraudulent, and conclusively so when not shown to have been made in good faith. If no explanation is made, the question is one of law, and it is the duty of the court to pronounce the sale or assignment void. (*Murray* v. *Burtis*, 15 *Wend*. 212. *Griswold* v. *Sheldon*, 4 *Comst*. 581.) The retention of the possession of evidences of debt, or choses in action, by the vendor or assignor, was always presumptive evidence of fraud against creditors. (*Mead* v. *Phillips*, 1 *Sandf*. *Ch*. 83, 88, 89.) The non-delivery of the possession of property assigned, whether real or personal, independent of any statute, has ever since *Twinis'* case, (3 *Coke*, 80,) in the time of Elizabeth, been deemed a badge of fraud, and sufficient to avoid the assignment. Even *Wilson* v. *Forsyth*, (24 *Barb*. 105,) although full of *dicta*, and special pleading, will upon examination, be found, so far as it decides any question that was before the court, to sustain this principle. That case was not a creditor's bill. No execution had been returned *nulla bona ;* it was no part of the remedy sought. in that action to reach the assets of the fraudulent debtor, but merely a suit to set aside the debtor's assignment of all his property as standing in the way of an attachment of particular pieces of his real estate. Issues having been framed and sent to a jury, the circuit judge on the trial of those issues charged the jury, among other things, " that if Forsyth, the assignor, did not deliver over all his property to the assignee the assignment was void." (*P*. 110.) The charge was unqualified, that if the assignor did not deliver all his property to the assignee the assignment was void. It did not submit to the jury any question of the assignor's " intent" in withholding the possession of

any part of his property; it did not purport to ask the jury as to the assignor's intent in not delivering his property. The charge, instead of treating the non-delivery to the assignee of a part of the debtor's property as a badge of fraud, and evidence of an intent thereby to defraud, unless there was some cicumstance in the case to negative such intent, treated the non-delivery as conclusive evidence admitting of no apology or explanation, and the court, at general term, held this was error, (*see opinion of Judge Gould*, 24 *Barb.* 128,) and that is all it held, except that the action could not be sustained, either as a creditor's bill, because the plaintiff was not a judgment creditor, with an execution returned *nulla bona,* or as a suit to remove a cloud upon title, because the plaintiffs had no title. (*Judge Gould's opinion*, 24 *Barb.* 119, 120.) But the court did not hold that if the assignor (as has been found in this case) had fraudulently failed to deliver a very large amount of his property with intent to conceal and retain it for his own benefit, at the very instant of the assignment, such fraudulent retention would not have been sufficient to have avoided the assignment. It is true that Judge Gould, *obiter dictum,* went into some special pleading to show that an assignment, giving preferences of a part only of a debtor's property, was not for that reason fraudulent, (*opinion, pp.* 121–127;) and then he concludes that if an assignment, which upon its face is limited to a portion only of the debtor's property, is not for that reason fraudulent, one which, upon its face, assigns all his property is not necessarily rendered invalid because the debtor only delivers a part of the property assigned. In this dictum the learned judge failed to preserve the distinction between the two cases. When the assignment is expressly limited on its face to a part of the assignor's property, the balance, the part not assigned, is open to the execution of judgment creditors, as if no assignment had been made. But when the assignment is

Waverly National Bank *v.* Halsey.

upon its face, of all the debtor's property, and only a part is delivered, then the part not delivered, being covered by the assignment, creditors are not at liberty to levy upon the part not delivered, unless they, for that reason, have a right to attack the assignment, and in such case the assignment stands as a cover to the part not delivered; and for this reason the non-delivery according to the assignment has ever been held a badge of fraud by the common law, and is, by our statute, (2 *R. S.* 137,) made conclusively so unless the non-delivery is explained, and the assignment shown to have been made in good faith. (6.) Under the third of such clauses or badges of frauds, we embrace the dispositions to Wickham and Tarbox; to the former of $4431.39, and to the latter of $1062.50, both of whom were insolvent at the time. These were distinct fraudulent acts of entirely a different character from the retention of the property by the assignors. They were not only in form the disposition of it to others, with the intent to defraud, but these dispositions had a much wider meaning. Tarbox was the book-keeper. It was he who made the false entries in the assignors' books; he knew all about the assignors' wrongful and fraudulent acts. Those fraudulent acts were crimes, and, like all crimes, sought concealment; it was therefore necessary to conceal them. How could that be done? We do not mean how could it be done successfully; but how did it appear to Northum that it could be done? We answer by bribing the bookkeeper, Tarbox. The $1062.50 did it. The next step was to select a friendly assignee; one who would; even though not himself guilty, defer to Northum's wishes. This was done, and De Camp was the man selected, for certainly he was on very intimate terms of friendship with Northum; so much so that just before the assignment he went with him as companion to Schuyler county. The next step in the scheme was to have the assignee keep the same book-

keeper, Tarbox, in custody of the assignors' books of account, and it was done. In this way Northum expected to conceal his frauds, and so we submit this assignment was part and parcel of the fraudulent scheme made with the intent to hinder and defraud creditors, and to cover all the other frauds. (*Angrave* v. *Stone*, 45 *Barb.* 35.) Now, in respect to the fraudulent disposition to Wickham of $4431.39, we call it a "disposition," although it was nominally in the form of a loan. Wickham was one of the assignors' clerks, and stood very much in some respects in the position of Tarbox. He must have known all about the fraudulent intent of the assignors, and what they were doing; he was Northum's father-in-law; he helped to collect the assignors' assets. Was insolvent at the time. He could not have collected and retained so much money of the assignors, and that too by Northum's consent, without knowing there was something wrong. The assignors could not have intended that the money that Wickham had, although it was embraced in their inventory as part of their assets, should ever be applied to the payment of their debts. Had they intended any such thing, why not hand their money over to the assignee, instead of giving it to Wickham, an irresponsible man. Assuming that this transaction, as the court has found, with Wickham, was fraudulent, and it makes as strong a case against the assignment as in *Litchfield* v. *Pelton*, (6 *Barb.* 188.) In that case the assignor sold all his property to one of his brothers, who was irresponsible, and took his notes, and then on the same day made a general assignment; and the court, Hurlbut, J., held that the sale and the assignment were to be regarded as parts of one scheme, and held the assignment void. (7.) The question is not whether the assignment could or did aid the assignors in their fraudulent scheme. But what was their intent in making it? If their scheme was fraud upon their creditors, as the court has found it was, and they made the

assignment as part of the general scheme, thinking (even though mistakenly) that the assignment might either deter creditors from attacking their fraudulent acts, or the better to aid them to conceal their frauds or their false entries in their books, or with the intent to keep their books and the general subject of their dealings from their creditors, or for the purpose of having a friendly assignee who might, defer to their wishes or deal leniently with any of their accomplices, Tarbox or Wickham, or others, or for any other purpose in which they had, or might have any interest, whether pecuniary or not. We say if any of these reasons operated in the minds of the assignors, then it is easy to see that they may have expected the assignment to aid their fraudulent scheme. (8.) We submit that some of these benefits have been realized by the assignors by making the assignment as they did. They obtained a friendly assignee; in this they were vitally interested, provided he might bring a suit against them as the court suggested, to unmask their fraud and recover of them the money which they fraudulently withheld. No such action has been brought; Tarbox, their willing tool, was retained as book-keeper, under the assignee. Wickham has not been molested, and probably never will be by De Camp. Wickham, Northum's father-in-law, was allowed by De Camp to occupy the assignors' store and use the office furniture and safe until the time of the trial, and generally to enjoy the good will of their business. The assignors have, in short, gained every advantage under De Camp that they could have expected under the most friendly assignee. Now, although these subsequent matters do not, in themselves, render the assignment void, yet they may be referred to with the view of divining with what intent the assignors acted in making it. (*Wilson* v. *Ferguson*, 10 *How. Pr.* 175, *per Clerke, J.*) (9.) The entire absence of any explanation of the assignors' conduct, should, in determining their intent, have a controlling effect. A fraudulent in-

tent may as well be inferred from the want of a proper explanation of one's conduct as from affirmative proof. (*Newman* v. *Cordell*, 43 *Barb.* 461.)

II. The intentional failure of the assignors to embrace in their inventory a large amount of their moneys, as found by the court, especially when such omission was accompanied with the intent fraudulently to conceal the same, renders the assignment void. (*Laws of* 1860, *ch.* 348, § 2.) See also *Juliana* v. *Rathbone*, (7 *Trans. Rep.* 53,) where the Court of 'Appeals held that the omission to file an inventory as required by the statute, avoided the assignment, and that too when the omission was not through any fraudulent design. The statute, section 2, requires that the assignors shall file a full and true inventory of all such debtor's estate at the date of the assignment. Now, an inventory which fraudulently omits a large portion of the estate, is not only a non-compliance with the statute, but a fraudulent evasion. As to the property omitted, no inventory is filed; if the omission to file any inventory is fatal, then by parity of reasoning, one designedly false is so much the more so. The principle, although founded upon the statute declaring that a discharge granted to an insolvent debtor shall be void if he has fraudulently concealed the name of any of his creditors, or falsely stated the sum due them, is applicable. (*Small* v. *Graves,* 7 *Barb.* 578. *Ayres* v. *Scribner,* 17 *Wend.* 407.)

III. The judgment should be reversed, and judgment ordered in favor of the plaintiffs upon the findings of fact by the court. Another trial is not necessary, as there is no dispute about the facts.

*Amasa A. Redfield,* for the respondents.

I. It is not pretended that the assignment in question is void upon its face, as matter of law. It follows that, to sustain the action, the fact of a fraudulent intent in making it must be proven by evidence. And this must be an in-

Waverly National Bank *v.* Halsey.

tent to defraud by making the assignment; not to defraud by some entirely independent act. (*Wilson* v. *Forsyth*, 24 *Barb.* 105. *American Exchange Bank* v. *Webb*, 15 *How. Pr.* 193.)

II. The facts proved on the trial are not such as in themselves constitute fraud; but to use the language of the court in *Wilson* v. *Forsyth*, (24 *Barb.* 103,) are such "as might, and probably would have been done, had no assignment been made or dreamed of;" therefore they are not proof of fraud in making the assignment.

III. The fraud, if any, must be in making the assignment. And there is no pretense that there was any fraud in that; but only that after making an assignment of all their property, the assignors failed to make a delivery of it all to the assignee. 1. The fact of a transfer of all their property cannot be denied, for such is the wording of the instrument. In the act of assignment there was good faith; and it is as to this act only that fraud can be predicated, or that the court can be asked to adjudicate. 2. If there was delay or fraud on the part of the assignors to deliver, under their assignment, the property assigned, the assignee has the right, and it is his duty, to sue for, or take other steps to get it in for the benefit of the creditors. This is no fraud on the creditors, therefore. (*McMahon* v. *Allen*, 35 *N. Y. Rep.* 403.)

IV. Since the decision in *Wilson* v. *Forsyth*, (24 *Barb.* 103,) and its approval by Davies, J., in *American Exchange Bank* v. *Webb*, (15 *How. Pr.* 193,) it seems settled law, that the fact that the debtor does not deliver all the property assigned (but absconds with it or appropriates it otherwise to his own use) does not of itself invalidate the assignment.

V. The badges of fraud relied upon by the plaintiffs may all be included in the one charge, that, although the assignors made a general assignment of all their property for the benefit of creditors, good upon its face, they with-

held a part of it from the assignee. This is no proof of fraud. (*Wilson* v. *Forsyth*, 24 *Barb.* 103.)

VI. Even if failure to deliver to the assignee could be deemed an index or badge of fraud, the assignee must be proved a party to the fraud to make it effective to set aside the instrument. A delivery implies two persons, one to give, another to receive. A perfect delivery of property must be the act of two parties jointly. Fraud cannot be predicated of the giving by one and at the same time good faith in receiving by the other. (*Carpenter* v. *Muren*, 42 *Barb.* 300. *Newman* v. *Cordell*, 43 *id.* 448.) Now there is no pretense, at all events there is no proof, that Mr. DeCamp, the assignee, has been a party to any fraud alleged against the assignors. The judgment should be affirmed.

*By the Court,* INGRAHAM, P. J. The justice, upon the trial, found that the assignors, before and at the time of the assignment, had a large amount of money, which was not delivered to the assignee, or mentioned in the inventory, which they intended to and did fraudulently conceal from their creditors and assignee; that this money was the result of collections made in contemplation of the assignment, and its possession was concealed by false entries in the books. He also found that the assignors, within a few days of the assignment, fraudulently bought large amounts of merchandise which they did not intend to pay for, and which was immediately sold on credit, and the debt owing therefor was transferred to the assignee; and that clerks were permitted to charge themselves with moneys which they were allowed to retain, either for their own account or for the benefit of the assignors.

The justice held that notwithstanding these acts, the assignment was not fraudulent, and rendered judgment for the defendants.

I suppose it cannot be denied that if the assignors

assigned property which was not delivered to the assignee, but was suffered, with the consent of the assignee, to remain in the possession of the assignors, the assignment would be fraudulent and void.

With the finding of such concealment of money by the assignors, both from creditors and assignee, for their own benefit, it is clear that part of the assigned property was retained by the assignors, and has not been delivered to the assignee.

In *Wilson* v. *Forsyth*, (24 *Barb.* 105, 121,) Gould, J., says : "Leaving the assignor in possession of personal property tends to show that the transfer was intended as a cover. It is this intention which makes the instrument void, and not the subsequent act." In *Griswold* v. *Sheldon*, (4 *N. Y. Rep.* 580, 588,) Bronson, Ch. J., says : " Such a transaction (leaving property in the hands of the debtor after mortgage or sale) the law always has and I trust always will pronounce a fraud upon creditors, and the judge should have so ruled, at the circuit." And in reference to the rule that such question of fraud should have been left to the jury, the court held that evidence to repel the fraudulent intent was necessary, and in the absence of such proof it was the duty of the court to · set aside the verdict sustaining the assignment, as erroneous.

The purchase of goods with a fraudulent intent, and the transfer of the proceeds of such goods to the assignee, has been held, in *Kennedy* v. *Thorp*, (3 *Abb. N. S.* 131,) to indicate a fraudulent intent sufficient to vacate the assignment.

In *Work* v. *Ellis*, (50 *Barb.* 512,) Clerke, J., held, "if the assignors are actuated by a fraudulent intent, in making the assignment, it is void, whatever may have been the intent of the other parties." In *Cuyler* v. *McCartney*, (40 *N. Y. Rep.* 221, 226,) Woodruff, J., while holding that admissions made by the assignor, after assignment, are not admissible to prove the fraud, says : " If the intent was fraudulent, the assignees, however free from fraud them-

---

Waverly National Bank *v.* Halsey.

---

selves, are not *bona fide* purchasers, but are affected by the fraudulent intent of the assignor.   In the cases of *Wilson* v. *Forsyth*, (24 *Barb.* 195,) and *American Exchange Bank* v. *Webb*, (15 *How. Pr.* 103,) and *Miller* v. *Halsey*, (4 *Abb. Pr. N. S.* 28,) it is stated that the mere non-delivery of all the assigned property is not of itself sufficient to set aside the assignment; but some of those cases hold that such evidence is not proper to be considered in ascertaining the assignor's intent in making the assignment.

The facts in this case are, that the debtors retained a large amount of money from the assignee, for their own use ; that they bought, immediately before the making of the assignment, merchandise which they did not intend to pay for, but which they sold on credit, and assigned the debt owing for the price thereof to their assignee; and that moneys were allowed to be retained by clerks fraudulently, either for their own use or for the benefit of the assignors.

These facts, unexplained by the debtors, are amply sufficient to warrant a finding that the assignors were actuated by a fraudulent intent in making the assignment, and in the absence of any proof explaining the presumption of fraud from such acts, it was the duty of the court to have so found.   In *Ball* v. *Loomis*, (29 *N. Y. Rep.* 412,) the want of change of possession is said to be "conclusive evidence of fraud, unless rebutted by affirmative evidence of good faith, and the absence of an intent to defraud."

The finding in this case is against the weight of the evidence, and a new trial should be ordered.

Judgment reversed, and a new trial ordered ; costs to abide the event.

[FIRST DEPARTMENT, GENERAL TERM, June 6, 1870.  *Ingraham*, P. J., and *Cardozo* and *Geo. G. Barnard*, Justices.]