JAMES TALCOTT, APPELLANT, *v.* WALTER P. HESS, AS ASSIGNEE, ETC., RESPONDENT, IMPLEADED, ETC.

LOUIS MAYER AND OTHERS, APPELLANTS, *v.* ALICE HAZARD AND WALTER P. HESS, RESPONDENTS.

*General assignment — avoided by the introduction of fictitious debts in the schedule — fraud, on the part of the assignor only, need be shown — only the assignor himself can testify as to whether or not the assignment was made in good faith.*

When a debtor, who has made a general assignment for the benefit of creditors, sets out in the schedule of debts and liabilities sworn to by him, debts due to friends which have been paid and discharged, such conduct is fraudulent and renders the assignment voidable.

To entitle a creditor to avoid an assignment, it is sufficient if a fraudulent intent on the part of the assignor be shown; it is not necessary to show that the assignee was a party to the fraud.

The husband of an insolvent assignor cannot testify as to whether the assignment was executed in good faith, although he has acted as the agent of his wife in the management of her property.

APPEAL from a judgment dismissing the complaint, recovered on a trial had at a Special Term.

*D. S. Riddle*, for the appellant.

*L. Birdseye*, for the respondent.

DANIELS, J. :

The action was brought by the plaintiff as a judgment creditor, whose execution against property had been returned unsatisfied, to reach and apply the property of the debtor Alice Hazard to the payment of his judgment. Before it was commenced, she made a general assignment to the defendant Hess for the benefit of her creditors. The total amount of her liabilities was stated in the schedule to be the sum of $20,475.66. The payment of $6,209.06 of this amount was preferred in the assignment, while the residue was not otherwise provided for than by the direction that the assignee should pay it, so far as he might be able to do so, out of the remaining proceeds of the assigned property. In the schedule of debts and liabilities, which was sworn to by the debtor on the 13th day of December, 1880, seven days after the making of the

assignment, a debt was stated to be owing to William Graham for the sum of $1,000, partly for goods, wares and merchandise, and partly for money loaned, for which he was stated to hold a mortgage upon premises known as 55 Hale avenue, East New York. By the evidence of Graham, who was sworn and examined as a witness upon the trial, it was made to appear that this mortgage had in fact been paid, and at the time of making the assignment the debtor owed this witness nothing individually. The payment of the debt from his statement appears to have been made either as it became due, or some time soon after it was due; and as the mortgage was made on the 8th of March, 1877, and the debt matured in one year from its date, and no payment appears to have been made on it after the assignment, it was probably paid before the assignment itself was executed. And as the assignment was executed in December, 1880, and the amount of the debtor's indebtedness was not so large as to warrant the suspicion that she could have forgotten the payment of this debt, the insertion of it in her schedule may well be held to have been made with the knowledge of its preceding payment on her part. · There was no such lapse of time and no such extent of indebtedness as would warrant the presumption that the fact that this debt had been paid escaped her recollection at the time when the assignment and the schedule were made. And the conclusion, therefore, follows that the insertion of it in the schedule was designed to secure its proportionate repayment to Graham, who was a person who appears to have sustained friendly relations with the debtor. And that necessarily would operate as a fraud upon the other persons, whose debts were not preferred, for such a payment would, to the extent of the amount paid, deprive them of so much of the property of the debtor to which they were lawfully entitled for the satisfaction of their debts. This would be the necessary result of including this amount as an indebtedness at the time owing from her to Mr. Graham, and it may be presumed that she contemplated and intended that to be accomplished by means of the assignment. (*Van Pelt* v. *McGraw*, 4 Comst., 110.)

In *Kavanagh* v. *Beckwith* (44 Barb., 192), *Bostwick* v. *Menck* (40 N. Y., 383) and *Frazier* v. *Truax* (15 Week. Dig., 386) it was held to be fraudulent for the debtor to prefer in a general assignment the payment of a fictitious indebtedness. And in *Fiedler* v.

*Day* (2 Sandf., 594) and *American Exchange Bank* v. *Webb* (36 Barb., 291) the same principle was also declared. These authorities proceeded upon the ground that the debtor to the extent of such preferences unlawfully deprived the creditors of the property which should be applied to the payment of their debts. And as the same consequence would result from directing the payment of an unfounded indebtedness by the general directions of an assignment, that would necessarily render the assignment void under the force and effect of these authorities. And the schedule which is made by way of completing the assignment may be referred to and considered a portion of it for the purpose of ascertaining the existence of this intention. (*Shultz* v. *Hoagland*, 85 N. Y., 464, 468, 469.)

In the schedule of property the mortgage to Graham was also stated to be an incumbrance upon the land described in it situated upon Hale avenue in East New York. And that, if the statement had been rendered effectual, would be attended with the effect of depriving the creditors of a corresponding interest in this parcel of land. And that may be reasonably held to have been understood by the debtor at the time when, by her affidavits, he verified these schedules.

From each of these circumstances her intent to defraud her creditors by means of the assignment is both legally and logically to be inferred, and as she made no explanation of these improper additions to her schedules of debts and incumbrance of property the facts must be concluded to exist as they were stated by Graham, the person to whom this mortgage was given, and who held it up to the time when it was afterwards formally discharged, upon an application made to him by the debtor's husband and without anything further being paid for this purpose.

To entitle the plaintiff to avoid the assignment he was not required to prove that the assignee himself was a party to this apparent fraud. For that purpose, as the assignee was not a purchaser for value in any sense of those terms, a fraudulent intent on the part of the assignor was all that could be required to render the assignment invalid. (*Waverly Nat. Bk.* v. *Halsey*, 57 Barb., 249, 263, 264.)

During the cross-examination of the husband of the debtor he was asked by defendant's counsel whether the assignment was

executed in good faith. This was objected to by the plaintiff's counsel and the objection was overruled, to which an exception was taken and the witness answered " yes, sir." This witness was not a party to the assignment. He had, however, been the agent of his wife in the management of a large portion of her business, but that did not qualify him to express his judgment upon the fact whether the assignmant was or was not executed in good faith. From his relation to the transaction this must have been a mere matter of inference or opinion upon his part, and it was not proper that it should be allowed to be given in the case. Authorities have been cited which are supposed to sustain this ruling, but they do not, for they only include the class of cases in which the intention of the witness is made material, and where upon that account, as a matter of fact, the witness has been held competent to state what that intention was. Those cases are all clearly distinguishable from the ruling under which this answer was allowed to be taken at the trial. It was the intent or good faith of the debtor herself that was the turning point of the controversy, and what that was this witness could only have inferred from the facts known to him, and that inference was not a legal subject of evidence in the case.

Other points have been taken in support of the appeal but they do not require consideration, for those that have already been examined sufficiently sustain the rights of the plaintiff to another trial of the action.

The case of Louis Meyer and others against the same defendants was for like relief and heard upon the same evidence so far as its consideration has now become important, and as the judgment in the preceding case cannot be sustained the same result must follow in the suit of Meyer and others. In both actions the judgments should be reversed and a new trial ordered with costs to the plaintiffs to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

Judgments reversed, new trial ordered, cost to plaintiffs to abide event.