GEORGE S. SHULTZ, Respondent, *v.* JOHN E. HOAGLAND et al., Appellants.

Where a judgment, entered upon a decision of the court on trial without a jury, is reversed by the General Term on questions of fact, such questions are open for review on appeal to this court, unrestrained by the findings of the trial court.

Where an assignment for the benefit of creditors is assailed on the ground of fraud, the fraud is to be proved and not presumed; and while it is not required that it shall be proved by direct evidence, but may be established as a deduction from other facts naturally and logically indicating its existence, it is not sufficient that the facts are ambiguous and just as consistent with innocence as with guilt; if, taken together they are consistent with an honest intent, the fraud is not established.

The evidence must also establish a fraudulent intent on the part of the assignor, existing at the time of the execution of the instrument; if executed with honest intent, no subsequent illegal acts on his part will invalidate it.

Such acts, however, are proper to be considered as characterizing the original intent.

The facts that the assignor and assignee are relations, and that the latter is preferred as a creditor, do not, of themselves, tend to prove fraud.

Where such an assignment purports to transfer all the property of the assignee, proof of an intentional omission from the schedule of property assigned of items of valuable property is sufficient to establish a fraudulent intent.

The omission, however, of an item shown to be entirely worthless is no evidence of fraud; so, also, if it is shown that the omission was accidental and unintentional.

Where, therefore, it appeared that two items of property which were omitted from the schedule were, at the time or soon after the execution of the assignment, delivered by the assignors to the assignee, and one of the former testified without contradiction that the omission was by mistake, *held*, that the omission did not establish fraud.

A balance due one of the assignors from an insolvent bank was omitted ; this was shown to be worthless. *Held*, that no inference of fraud could be drawn from the omission.

At the time of the execution of the assignment there was a balance standing to the credit of one of the assignors upon the books of another bank ; this was not included in the inventory. It appeared that the assignment was executed and filed on Saturday ; this balance was withdrawn the next Monday ; it did not appear by whom or in what manner. The inventory was subsequently made and was verified. *Held*, that the presumption was that the balance was drawn out on the check of the assignor, executed prior to the assignment ; also, that a failure of the assignor to explain the transaction did not authorize the presumption that he was the owner of the balance at the time of the assignment ; that until proof was given sufficient to authorize a presumption of fraud, the assignors were not bound to explain.

Under the act in relation to assignments for the benefit of creditors (Chap. 466, Laws of 1877), an omission of assets from the schedule does not, *ipso facto*, make the assignment void.

(Argued April 18, 1881; decided June 14, 1881.)

APPEAL from order of the General Term of the Court of Common Pleas in and for the city and county of New York, made February 2, 1880, which reversed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff, as a judgment creditor of the defendants, John E. and Isaac E. Hoagland, who composed the firm of Hoagland & Son, to set aside as fraudulent an assignment of their copartnership and individual property, executed by them to the defendant, Goetschius.

The facts appear sufficiently in the opinion.

*N. A. Chedsey* for appellants. The judgment of the Special Term having been reversed on a question of fact, this appeal brings up for review the determination of the General Term upon the questions of fact as well as the questions of

law. (Code of Civil Procedure, § 1338.) Even if the circumstances surrounding the deposit in the bank, to the credit of one of his assignors, were suspicious, it was not incumbent upon the assignee to explain them away. (*Cuyler* v. *McCartney*, 40 N. Y. 226, 227.) If the charge, that the defendants, "Hoagland," two days after the assignment, received the deposit and converted it to their own use, is fairly sustained by the evidence, it does not sustain a finding that the assignment was made for the purpose of hindering or defrauding the creditors of the assignors. (*Wilson* v. *Forsyth*, 24 Barb. 107; *Miller* v. *Halsey*, 4 Abb. Pr. [N. S.] 28; *Matthews* v. *Poultney*, 33 Barb. 127; *Hardman* v. *Bowen*, 39 N. Y. 200; Bump on Fraudulent Conveyances, 362; *Cuyler* v. *McCartney*, 40 N. Y. 226; § 21, General Assessment Act of 1877, chap. 466; chap. 318, Laws 1878; *Matter of Strauss*, 1 Abb. N. C. 402; chap. 314, Laws of 1858; *Miller* v. *Halsey*, 4 Abb. [N. S.] 33; § 25, General Assignment Act of 1877.)

*Benj. F. Carpenter* for respondent. In reviewing a decision of the General Term, reversing a judgment entered upon a decision of a judge, when it is certified that the order of reversal was made "upon questions of fact as well as of law," the Court of Appeals occupies the position of the General Term as to the facts as well as the law. (*Godfrey* v. *Moser*, 66 N. Y. 250; Code of Civil Procedure, § 1338; *People, etc.* v. *The Board of S., etc.*, 70 N. Y. 228; *Simar* v. *Canady*, 53 id. 298.) Plaintiff made out a *prima facie* case of fraud and fraudulent intent on the part of the defendants in the making and delivering of the assignment. (*DeCamp* v. *Marshall*, 2 Abb. Pr. [N. S.] 373; *Miller* v. *Halsey*, 4 id. 28; *Cram* v. *Mitchell*, 1 Sandf. Ch. 251.) An assignment fraudulent and void cannot be rendered valid by subsequent acts of the assignor. (*Averill* v. *Loucks*, 6 Barb. 470, 476.) The validity of the assignment depends upon the intent of the assignor at the time of making the assignment. (*Mathews* v. *Poultney*, 33 Barb. 127; *Putnam* v. *Hubbell*, 42 N. Y. 114; *Wilson* v. *Forsyth*, 24 Barb. 120; *Browning* v. *Hart*, 6 id. 91, 94;

*Rathbun* v. *Platner,* 18 id. 272; *Griffin* v. *Marquandt,* 17 id. 28; *Newman* v. *Cordell,* 43 id. 448; *Forbes* v. *Miller,* 25 N. Y. 430; *Searing* v. *Brinckerhoff,* 5 Johns. Ch. 329; 2 R. S. 72, § 1; 2 R. S. 137; 3 R. S. [6th ed.] 145, § 4; *Berry* v. *Riley,* 2 Barb. 307; *Terry* v. *Butler,* 43 id. 395; *DeCamp* v. *Marshall,* 2 Abb. Pr. [N. S.] 373.)  The assignment was fraudulent and void because of the fraudulent intent and acts in relation to the four omissions made by the assignors in their schedules.  (*DeCamp* v. *Marshall,* 2 Abb. Pr. [N. S.] 373.)

FINCH, J.   The validity of the general assignment made by Hoagland & Son, for the benefit of creditors, was assailed upon the ground of fraud.   The Special Term upheld it, as honest and fair, because not satisfied from the evidence that it was executed with an intent to hinder, delay or defraud the creditors of the assignors.   Upon appeal, the General Term reversed this decision, having reached an opposite conclusion upon the question of fraudulent intent.   Since the reversal by the latter court is certified to have been upon questions of fact, as well as upon questions of law, the inquiry whether this assignment is proved to have been made with an actual fraudulent intent is open to our review, unrestrained even by the findings of the trial judge.   (*Godfrey* v. *Moser,* 66 N. Y. 250.)

The case furnishes no exception to the rule that fraud is to be proved and not presumed.   (*Grover* v. *Wakeman,* 11 Wend. 188.)   It is seldom, however, that it can be directly proved, and usually is a deduction from other facts which naturally and logically indicate its existence.   Such facts, nevertheless, must be of a character to warrant the inference.   It is not enough that they are ambiguous, and just as consistent with innocence as with guilt.   That would substitute suspicion as the equivalent of proof.   They must not be, when taken together and aggregated, when interlinked and put in proper relation to each other, consistent with an honest intent.   If they are, the proof of fraud is wanting.

The evidence also must ascertain and establish the assignor's intent at the time of the execution of the instrument.   As

was said in *Hardmann* v. *Bowen* (39 N. Y. 200), "If the assignment was valid in creation, having been honestly and properly executed and delivered, no subsequent illegal acts, either of omission or commission, can in any manner invalidate it." But this rule must be taken as not intended to deny that such subsequent acts may reflect light back upon the original intent, and help us to discern that correctly.

The facts relied upon as indicating the fraudulent intent in this case are, in substance, as follows: That the assignee selected was the son-in-law of one of the assignors, and resided with him; that such assignee was preferred as a creditor to an amount equal to one-fifth of the assets; that four large items of property, owned by the assignors, were not placed upon the schedules, or their existence disclosed; that at least one of these was afterward retained by the assignors for their own use and benefit; and that these circumstances of suspicion pressed upon the assignors for an explanation consistent with honesty of purpose, but no such explanation was given. Substantially this is the case made by the attacking creditors, and which led the General Term to the inference of a fraudulent intent.

The relationship of assignor and assignee, and their intimacy and friendship, and the preference given to the latter as a creditor prove nothing by themselves. They are consistent with honesty and innocence, and become only important when other circumstances, indicative of fraud, invest them with a new character and purpose, and transform them from equivocal and ambiguous facts into positive badges of fraud. Our attention, therefore, must be concentrated at first upon the other circumstances relied upon, and their extent and importance determined.

The assignment purported, on its face, to transfer all the property of the insolvents. Its schedules annexed amounted, therefore, to a representation that their contents disclosed all the property of the assignors, with nothing omitted, or concealed and hidden. Such a representation would have some influence and effect upon creditors. Its tendency would be to

disarm their suspicions, and induce them to rest quiet in the belief that the debtor had devoted all his property to the payment of his debts. If, now, that representation was false to a material extent, and consciously and purposely so, the inference of a fraudulent intent could hardly be avoided. The intentional omission, calculated to deceive, and to lull into slumber and inactivity the interest and diligence of the creditor, would plainly argue a fraudulent purpose. Not so, however, if shown to have been unintentional, and the result of accident or oversight. It would be hard to find any schedules absolutely perfect, or any debtor who could inventory every item of his property with strict accuracy. Room must be allowed for honest mistake, and possibly even for careless and thoughtless error; but, where the omission cannot thus be explained or excused, the inference of a fraudulent intent must follow.

The omissions in the present case were four in number, and consisted of a bond and mortgage for the sum of $1,000; a balance on deposit in the Greenwich Bank of $33.03; a balance in the Freedman's Savings Bank of $3,000; and a balance in the People's Bank of $434.02. As to the first two items, the assignors allege that they were omitted from the schedules inadvertently and by mistake, but were, in fact, delivered to the assignee. The sum in the Greenwich Bank was small, and the bond and mortgage alleged to be of little value. No proof of that fact was given because the evidence to show it was excluded, upon the objection of the creditor. The mortgage was on record in Richmond county, where the land was situated, and ran to the defendant Hoagland, openly and by name. It was delivered to the assignee at the time of the assignment. The assignor so swears explicitly, and there is no contradiction of his evidence in this respect. The small balance in the Greenwich Bank was drawn by the assignee upon a check furnished him for that purpose by the assignor, on the 24th of September, 1878, about a fortnight after the making of the assignment, and the day after the schedules were verified by the affidavit and signatures of the assignors. These explanatory facts substantially relieve the

case from a suspicion of intentional fraud or concealment as to the items under consideration. They were not withheld from the assignee; they went fairly into the assets; their surrender repels suspicion, and we are justified in the belief that their omission from the schedules was, as the answers allege, the result of mistake and inadvertence. So far, both the Special and General Terms are in accord with our conclusions.

The claim upon the Freedmen's Bank has a different explanation. The answers put in issue the ownership of any such claim by the assignors at the date of the assignment. The proof leaves that fact in doubt. The assignor first says that he had such a claim when the schedules were filed, but afterward, when asked about the amount of the dividends, says: "In my supplementary proceedings I could not state, but I found out since that it was so valuable that I drew what I had in the book and gave it to my wife — a present of it — she has got it — got the bank-book." Precisely what this means we do not know. Neither side inquired, probably for the reason that the claim was valueless, as afterward appeared. It was admitted that the bank had become insolvent and passed into the hands of commissioners to close up its affairs, by whom two dividends had been paid to the assignor, Hoagland, before his assignment. The balance was probably valueless. That probability is so strong from the evidence as to make it a matter of little consequence whether it was inventoried or not. The omission from the schedules, or the failure to deliver to the assignee a worthless demand might be an unwise or imprudent neglect, but can scarcely serve as the basis for an inference of fraud. Where there could be neither gain to the assignor, nor loss to the creditors from the omission, it is easy to believe that its mention was deemed unnecessary, or its existence overlooked, and impossible to find or infer any evil motive for its omission. If utterly worthless, it may very well for every purpose, except that of explanation, be treated as if it never had actual existence.

We are thus brought to the one fact upon which alone the conclusion of the General Term rested, viz.: the omission from

the schedules of the balance of $434, which stood to the credit of the elder Hoagland, in the People's Bank, at the date of the assignment, and its withdrawal two days after by somebody. We do not know who drew it. The bank-books show that it was drawn out on the 9th. Presumably it was so drawn upon some check, or note, or order, signed by Hoagland. We do not know upon which. There were notes held by this same bank, which had been discounted for the assignors; and upon which they were contingently liable as indorsers. The balance may have been applied upon one of these, but we know of their existence only from the schedules, and their dates and time of maturity do not appear. It is more probable that the money was drawn out by check. The assignment was made and filed February 7, 1878. That was on Saturday. The money was drawn on the 9th. That was on Monday. It is probable that the check was drawn on Saturday, and before the assignment. The reasons for that presumption are many. If it was not so the assignors were guilty of perjury. They swore on the 23d that their inventory contained all the estate possessed by them on the 7th. This balance was not forgotten or inadvertently omitted. The check drawn against it forbids that assumption. If it was not drawn and delivered before the assignment, we are to presume perjury. If drawn after, it was either a fraud upon the assignee, or upon the person to whom it was made payable. We must presume that also. On this hypothesis too, we must accuse the insolvent of an amount of folly which is unnatural and inexplicable. If he meant, as we must assume that he did, to appropriate this fund to some purpose other than a distribution under the assignment, it is almost absurd to suppose that he would peril his purpose by assigning it first and drawing it after. The evidence leads us to believe that the assignors had parted with this balance before the assignment. The creditors insist that we should presume the contrary, and on that presumption found a conclusion of fraud; and they justify this position mainly upon the ground that the debtor should have explained. We may concede that he might have wisely done so, and that our

duty would be plainer if he had. But there were two parties to this silence. The assignors were on the witness stand. They were called and examined by the plaintiff. He chose to ask no explanation and to make no investigation, but to rely wholly upon the inference to be drawn from the credit standing on the books of the bank. But that inference is shaken by the check presented on the ninth, and the other circumstances that rebut it. He failed, therefore, to prove satisfactorily his foundation facts. So failing the defendants may have felt that the need of explanation did not arise; that the presumption of innocence would prevail over that of guilt; and that if the prosecutor was silent the defense need not explain. Until a case was made against them neither denial nor explanation was necessary, and the case made rested upon facts which were ambiguous, equivocal, consistent as well with innocence as guilt. The point was whether Hoagland owned this balance on February 7th and concealed it from his assignee and afterward drew it. The plaintiff did not sufficiently prove this; he left it in uncertainty; he did not even make it probable. The one only fact he had, that in the bank it stood to Hoagland's credit on Saturday, is made doubtful and uncertain by the presence of his check against it on Monday. The evidence is too weak to found upon it a presumption first of perjury and next of fraud. The facts lead us to the belief that this fund was transferred before the assignment, and so that it did not belong in the schedules or to the possession of the assignee. If there is doubt about it the presumption of innocence should prevail. The plaintiff was bound to prove fraud, and not ask that it be presumed. These views prevailed at the Special Term and must control the disposition of the case.

We have purposely omitted any reference to the cases cited as authority on both sides upon the question of fraud. (*Wilson* v. *Forsyth*, 24 Barb. 106; *American Exchange Bank* v. *Webb*, 15 How. Pr. 193; *Miller* v. *Halsey*, 4 Abb. Pr. [N. S.] 28; *Pike* v. *Bacon*, 8 Shepley, 280; *De Camp* v. *Marshall*, 2 Abb. Pr. [N. S.] 373.) Each depended on its own peculiar

facts. We do not think it needful here to approve or disapprove, since precedents are of little service upon questions of fact never exactly alike. We prefer to decide the present case solely upon its own peculiar facts.

The contention that any omission of existing assets from the schedules makes the assignment void under the statute, *ipso facto*, and without reference to the cause or occasion of the omission is sufficiently answered by the opinion of the learned judge at Special Term. We concur with his conclusion that the act of 1877 involves no such result.

The order of the General Term should be reversed, and the judgment of the Special Term affirmed, with costs.

All concur, except FOLGER, Ch. J., absent.

Order reversed, and judgment affirmed.