### ADDISON CRAFT v. ELIAS BLOOM ET AL.

1. ASSIGNMENT FOR CREDITORS. *Purchaser in good faith. Consideration.*
    An assignment for creditors, if fraudulently intended by the grantor, will not be sustained by the good faith of the beneficiaries and trustee, unless some new consideration passes from them at the time of its execution.
2. SAME. *Simulated debt. Badge of fraud.*
    Whether one fictitious debt will vitiate an assignment for creditors, *quære ;* but it is a badge of fraud to be considered by the jury in

determining from all the evidence whether the grantor's intent was fraudulent.

3. ASSIGNMENT FOR CREDITORS.   *Consideration.   Lawyer's fee.*

Security of the fee for preparing the conveyance and release of the grantor from liability therefor, is not a sufficient consideration to support such an assignment, although the conveyancer was ignorant of the fraud.

4. SAME.   *Reservation of benefit.   Hope of reward.*

Such an assignment is void if induced by a promise that the grantor shall enjoy a secret benefit in the property conveyed, but not if caused by a hope of subsequent reward held out to him by creditors.

5. SUPREME COURT.   *Instructions.   Immaterial error.*

An erroneous instruction will not cause a reversal, if without the circumstances to which it is directed the verdict is manifestly right on the other facts, which of themselves make out the case.

APPEAL from the Circuit Court of Marshall County.

Hon. J. W. C. WATSON, Judge, did not sit in this case, but Hon. J. A. GREEN presided by interchange.

On January 17, 1881, J. B. Rosenfeld, a storekeeper, who, weeks before, had announced his intention to make an assignment, applied to Watson, Watson & Smith, telling them that he put himself in their hands. These lawyers, upon examining his affairs, advised him to make a general assignment for the equal benefit of all his creditors, and agreed that their fee of five hundred dollars should be secured by the instrument, and the grantor released from liability. Lists of assets and creditors were furnished by Rosenfeld's book-keeper, and believed by the lawyers to be correct. During the preparation of the deed, Rosenfeld, with an agent of S. O. Thomas & Co., came into the lawyers' office and directed them to prefer that firm for five thousand dollars ; but, when the agent left, Rosenfeld revoked the order. The agent was informed of this by the lawyers, and returned, and conversing privately with Rosenfeld, told him that S. O. Thomas & Co. had protected him once before, and would do so again. Rosenfeld then, against his counsels' advice, instructed them to make the preference. Subsequently he ordered other preferences, and, finally, at six o'clock in the evening the assignment was acknowledged, and filed for record, substantially as follows : —

Whereas, I, J. B. Rosenfeld of Holly Springs, Miss., am indebted to the following named parties in about the sums set opposite their names respectively, to wit: Allen Perkins in the amount of $575.93; Bank of Holly Springs, $1,521; B. Lowenstein & Bro., $1,104.49; W. A. Gage & Bro., $1,200; J. M. Robinson & Co., $652.74; Jack Perkins, $510; J. W. Stephenson, $314; J. J. White, $341; John Mahon & Sons, $282.95; Oliver Finnie & Co., $202.09; Rosenberg & Nathan, $470.42; George White & Co., $473; P. S. Allison, $82; Green Davis, $100; S. O. Thomas & Co., $5,000; Elias Bloom & Co., $375.28; Charles Smith, $1,500; L. Rosenfeld, $600; J. P. Norfleet, $650; C. C. Rosenfeld, $3,000; Lena Levy, $1,000; S. Rosenfeld, $2,500; Watson, Watson & Smith, $500, and to other persons possibly, whose names do not now occur to me, in various small amounts, and whereas I am insolvent; now therefore, in consideration of the premises, and my desire to devote all my property to the payment of said indebtedness as hereinafter directed, I have this day granted, bargained, and sold, and do by these presents convey, transfer, and assign to Addison Craft, as assignee, my entire stock of goods, wares, and merchandise, now in my storehouse on the west side of the public square in Holly Springs, Miss., with my safe, desk, and fixtures of all kinds, my books, notes, and accounts, and all evidences of debt, together with all my assets of every kind not exempt by law from levy and sale under execution or attachment. [Certain land was here conveyed by description.] No inventory is now prepared, but it is my intention to embrace in this assignment all my assets not exempt, and the inventory will be prepared and handed to the assignee with the assignment as soon as practicable. Said assignee shall take full possession of said assets at once, and it shall be his duty to collect the notes, accounts and other debts hereby assigned; and such as cannot be collected, with the real property herein conveyed, he is to sell at the Court House door in Holly Springs, at public outcry, to the highest bidder, for cash, after thirty days' notice of the time, place, and terms of sale published in a newspaper in Holly Springs for four consecutive weeks. The land shall be sold at once, but it is expressly provided that the unpreferred creditors, or a majority

of them may change the terms of the sale of said land if they so desire. It is also further provided as follows, to wit: that such notes, accounts, and debts as cannot be collected in full by the assignee by law or otherwise may be compromised upon such terms as may seem most advisable and best to him ; that the assignee shall dispose of the stock of goods, wares, and merchandise, fixtures, office furniture, safe, and the like, at public or private sale for cash, as he may deem most expedient and best for the interests of the beneficiaries herein ; that he may employ such assistance in the execution of his trust as shall be necessary ; that all the personal property shall be converted into money within ninety days from this date, or sooner if practicable ; that the assignee shall distribute the money realized, in the following manner : He shall first pay the costs of executing this trust, including a reasonable compensation to himself, and five hundred dollars to Messrs. Watson, Watson & Smith, my attorneys ; second, he shall pay Allen Perkins, Jack Perkins, and S. O. Thomas & Co. in full ; third, he shall pay Charles Smith, L. Rosenfeld, P. S. Allison, Lena Levy, C. C. Rosenfeld and Green Davis in full ; fourth, he shall pay S. Rosenfeld in full ; fifth, he shall distribute the residue of the fund realized among my remaining creditors *pro rata,* (several of my creditors having security, shall only receive a *pro rata* upon the balance which may remain due after said security is exhausted ; and if the security in any case exceeds in value the debt secured, the excess shall go to the assignee herein, and be applied as my other assets) ; that the said assignee shall ascertain forthwith the exact amount due each of my creditors both preferred and unpreferred (the amounts hereinbefore given not being perhaps strictly accurate), and shall pay only the true amounts due the preferred creditors, and on the true amounts due the unpreferred creditors ; and that the assignee shall make and submit to those interested, upon demand from them, a full statement showing the amount realized under this assignment, and the disposition made by him thereof. The distribution under the assignment shall be as rapid as practicable.

The property conveyed being insufficient to pay through the fourth class of creditors, the appellees, who were in the fifth

class, attached the goods, and the appellant claimed them. On the trial of the claimant's issue, it was shown from the grantor's books that a balance of only four hundred dollars was due L. Rosenfeld, his book-keeper; that Green Davis was a debtor; and that the names of S. Rosenfeld, C. C. Rosenfeld, the grantor's wife, Lena Levy, her sister, and P. S. Allison, his clerk, were not on the books. Lena Levy testified that she had entertained her sister and family when refugees from an epidemic, but that no charge was made, and nothing was due her. The existence of S. Rosenfeld was left in doubt by the evidence. Witnesses testified that, on the night of the assignment, J. B. Rosenfeld, who was drinking, told L. Rosenfeld to "fix up the books for himself and the boys," and said that he "had his creditors down, and they must agree to his terms or they would not get a cent, but the boys in the store would have a new boss for a while;" and that later, but before the assignee took possession, the key of the store was lost, a barrel of coal oil was rolled out, several sacks full of fancy articles and seventeen suits of men's clothing were carried to Rosenfeld's, and a dray load of sugar, coffee, and flour was driven to the residence of the grantor and his clerks. No entry of these transactions appeared in the books. It was further shown that J. B. Rosenfeld, who had previously failed and compromised with his creditors, paying them all, except S. O. Thomas & Co., one third of their claims, proposed a like settlement soon after this assignment, by letters written by the lawyers, who called and attended a meeting of the creditors for that purpose without success.

Judgment by default against the defendant in attachment being proved for the sum due the appellees, the jury, under the instructions set forth in the opinion, decided the claimant's issue against the appellant, and thereupon the property in controversy was condemned, and ordered to be sold for the payment of the debt and costs.

*E. M. Watson,* for the appellant, argued the case orally.

*Watson, Watson & Smith,* on the same side.

Inducements offered by the agent of S. O. Thomas & Co. caused the preference, but not the assignment, which would be valid even if the preference was void. But the assertion

of the agent was too vague to affect even that. *Marbury* v. *Brooks*, 7 Wheat. 556, 577 ; Bump Fraud. Con. 398. While the preference to Lena Levy was in the nature of a gift, it was based on valuable services, and the grantor reserved no benefit to himself. If, however, a fictitious debt was included in the assignment, it would not be vitiated thereby. *Hempstead* v. *Johnston*, 18 Ark. 123 ; *Hardcastle* v. *Fisher*, 24 Mo. 70 ; *Mackintosh* v. *Corner*, 33 Md. 598 ; *Brannock* v. *Brannock*, 10 Ired. 428 ; *Woodward* v. *Marshall*, 22 Pick. 468 ; *Anderson* v. *Hooks*, 9 Ala. 704 ; *Billups* v. *Sears*, 5 Gratt. 31 ; *Willis* v. *Gattman*, 53 Miss. 721 ; *Thomson* v. *Hester*, 55 Miss. 656 ; *Surget* v. *Boyd*, 57 Miss. 485 ; Burrill on Assignments, § 143 ; Bump Fraud. Con. 385. The assignee, who is a purchaser for value, is not affected by the grantor's bad faith. *Myers* v. *Kinzie*, 26 Ill. 36 ; *Wise* v. *Wimer*, 23 Mo. 237 ; *Gates* v. *Labeaume*, 19 Mo. 17 ; *Wilson* v. *Eifler*, 7 Cold. 31 ; *Cornish* v. *Dews*, 18 Ark. 172 ; *Mandel* v. *Peay*, 20 Ark. 325 ; *Hollister* v. *Loud*, 2 Mich. 309 ; *Abercrombie* v. *Bradford*, 16 Ala. 560 ; *Bancroft* v. *Blizzard*, 13 Ohio, 30 ; *Thomas* v. *Talmadge*, 16 Ohio St. 433. This is true at all events as to the lawyers who, for the release of Rosenfeld, received a lien upon the property under the assignment.

*C. B. Howry*, on the same side.

As the preferred creditors have not been heard, the court on doubtful evidence should reverse, if the instructions are erroneous. Justice has not been done, and a new trial with proper charges will result in a different verdict. This case is an exception to the general rule. While the court declared the assignment valid *per se*, instructions were given which destroyed the effect of that ruling, for the insertion of one debt by mistake was said to avoid the entire assignment. The rule is the contrary. An assignment may be valid as to some debts and invalid as to others. *Billups* v. *Sears*, 5 Gratt. 31 ; *Harris* v. *De Graffenreid*, 11 Ired. 89 ; *Tatum* v. *Hunter*, 14 Ala. 557 ; *Kayser* v. *Heavenrich*, 5 Kansas, 324 ; *Pinneo* v. *Hart*, 30 Mo. 561 ; *Mackintosh* v. *Corner*, 33 Md. 598. Even in States holding otherwise the decisions are qualified. *Kavanagh* v. *Beckwith*, 44 Barb. 192. The counsel fee was the agreed price for service to end with the execution of the instrument, and no benefit was reserved thereby to the grantor. Burrill on Assignments,

§§ 144, 230, 417. The claimant was not bound to prove the debts genuine ; it was for the plaintiffs to show that they were simulated. The consideration becomes important only when fraud is shown. *Basset* v. *Nosworthy*, 2 Eq. Lead. Cas. 1.

*W. M. Strickland*, for the appellees, made an oral argument. *Strickland & Wooten*, on the same side.

Justice has been done, and the evidence preponderates in favor of the verdict, which will therefore be sustained. *Routh* v. *Agricultural Bank*, 12 S. & M. 161; *Cogan* v. *Frisby*, 36 Miss. 178; *Kelly* v. *Miller*, 39 Miss. 17. Although the court declared the assignment valid on its face, it was the province of the jury to weigh the *indicia* of fraud appearing in the deed as well as the external evidence. Burrill on Assignments, § 304. Preference of S. O. Thomas & Co., who had befriended him on a previous occasion, in connection with the conversation with the agent, points to a benefit reserved to the grantor. His expression that his creditors " must agree to his terms or they would not get a cent," the removal of goods from the store, and the insertion of simulated debts, show the grantor's attempt to create a secret trust fund for himself, and to ward off his creditors. Burrill on Assignments, § 117 ; *Surget* v. *Boyd*, 57 Miss. 485. Security of counsels' fee for services to be rendered was reservation of a benefit. If the object was a compromise, by dividing his assets among such creditors as would release him, the assignment is void. *Bennett* v. *Ellison*, 23 Minn. 242. Even if fraud in fact was not proved, the judgment would stand, for the deed, which permits unpreferred creditors to control the land sale, is fraudulent on its face.

*L. Johnson*, on the same side.

Though adjudged valid in law, the deed went to the jury only for what it was worth in connection with the other facts. Ninety days was too brief a time in which to execute the trust, and this limitation vitiated the conveyance. *Farmers' Bank* v. *Douglass*, 11 S. & M. 469; Burrill on Assignments, § 214 ; Bump Fraud. Con. 400. Reservation of the fee for services to be rendered, the proposal of compromise, and the lawyers' action after the execution of the instrument, together with threatened sacrifice of the property on account of undue haste, showed the object of the assignment and rendered it void.

Burrill on Assignments, § 230; Bump Fraud. Con. 356; 2 Kent Com. 536. Rosenfeld was on the track which he had travelled before, attempting to delay his creditors until he could force or cajole them into a compromise. He even laid in provisions and clothing for the siege. By preferring simulated debts to members of his family he provided money for the war, and his army for the campaign to be paid out of the spoils. These facts, being unexplained, render the instrument void. *Thompson* v. *Furr*, 57 Miss. 478; Burrill on Assignments, §§ 146, 247; Angell on Assignments, 96, 108.

CHALMERS, C. J., delivered the opinion of the court.

The court below properly held that the deed of assignment in this case was not fraudulent upon its face; and the jury properly found, as we think, that it was shown by the testimony to have in fact been executed by the grantor with intent to defraud his creditors. It is urged however by the appellant that the verdict and judgment must be reversed because of erroneous rulings of the court in giving and refusing instructions to the jury. Thus it is said that the court erred in charging the jury that if they believed that the assignment was made with fraudulent intent on the part of the assignor, the assignee obtained no title, though he himself was ignorant of such intent; and refused a charge asked by the assignee to the effect that he was to be deemed a purchaser for value and therefore acquired a good title by virtue of his own good faith, even though the instrument was made with fraudulent intent on the part of the grantor. Whatever contrariety of opinion may elsewhere exist as to the merits of these conflicting propositions, nothing is better settled in this State, than that he who merely receives a security for a pre-existing debt without the advance of any new consideration, is to be regarded and treated as a volunteer, and not as a purchaser for value. *Surget* v. *Boyd*, 57 Miss. 485. All the debts secured by the assignment in the present case except one (to be presently considered) were pre-existing debts, and it is not pretended that any new consideration was advanced either by the assignee or by the creditors, whose trustee he was. The instructions of the court were therefore correct on this point.

It is said that the court erred in instructing the jury that if they believed that one unfounded and fictitious debt was secured by the assignment, this rendered the entire instrument void, even as to those creditors whose claims were honest and who had no connection with or knowledge of any fraud on the part of the assignor. We do not so understand the charges granted by the court. Four charges were given on this point, and while one of them seems, as copied in the bill of exceptions, ambiguous and perhaps susceptible of this construction, the others quite plainly and unmistakably tell the jury that the insertion of false and fictitious debts in an assignment for the benefit of creditors is only a badge or evidence of fraud to be considered and weighed by them in connection with all the facts of the case, in determining whether in truth the instrument was executed with a fraudulent intent. We know of no authorities which announce a rule on this subject more favorable for the appellant in this case. The weight of authority seems to be in favor of the doctrine that the insertion of fictitious debts in a deed of assignment avoids the instrument only as to the fraudulent debts, leaving it intact in favor of the honest creditors whose debts are secured by it, and who had no privity with the fraudulent intent on the part of the assignor. But, for several reasons, the question is not presented by the case before us. As before remarked, the most favorable doctrine was announced for the appellant, who alone assigns error, and who, of course, is not aggrieved by the rulings upon this subject. In the second place, the doctrine that, though the inducing cause of the assignment on the part of the maker was the fraudulent intent to secure payment of a fictitious and unfounded debt, the instrument will nevertheless be valid as to all holders of just debts who had no connection with this dishonest purpose, can have no application in this State, in cases where all the just debts secured are pre-existent ones, and no new consideration has been advanced, for the reason that the holders of such debts are deemed with us mere volunteers in accepting new securities, and, as such, bound by the fraud of the grantor, though they have no actual knowledge of it. The deliberate and intentional insertion by an assignor of a debt known by him to be

unfounded must ever be a strong badge of fraud, and wherever a court or jury is satisfied from this or other circumstances, that the intent and object in making the conveyance was to defraud creditors, the instrument will be void as to all pre-existing debts secured by it, regardless of the knowledge or participation of the creditors.

It is said, however, that there is one debt secured by the assignment in this case which is not of this character, and that the *bona fides* of the holder of that claim will uphold the instrument at least to the extent of protecting this demand, without regard to the intent of the assignor. This is the fee due the attorneys, who advised the execution of and prepared the assignment. When called upon for their advice ·and assistance in the matter, they demanded a fee of five hundred dollars, and when the debtor professed his inability to pay so large a sum they proposed to release him from all personal liability, and to accept in lieu of it a stipulation in the deed that the fee should be a preferred debt and should be paid by the assignee out of the assets among the first debts secured. This proposition was accepted, and the instrument was drawn accordingly. It is admitted that the attorneys had no knowledge or suspicion that the debtor had any intention of defrauding his creditors in making the assignment, and the entire good faith of the attorneys themselves is conceded. It is hence argued that inasmuch as theirs was a contemporaneously contracted debt, and they gave up all personal demands against the debtor in consideration of being included in the assignment, they are to be regarded as purchasers for value, and their good faith must protect the instrument so far at least as their own demand is concerned. We cannot assent to this view. We think that the testimony shows an agreement on the part of the attorneys to risk their fee on the integrity of their client and the validity of the instrument prepared by themselves. But apart from this, we think it unsafe to declare that an instrument intentionally executed by the grantor for the purpose of swindling his creditors is to be upheld in any court for any purpose, by the good faith of the attorney who prepared it, even to the extent of upholding the fee of the attorney. Such an announcement

would certainly lead at once to the insertion of a stipulation
in every assignment similar to the one here, and there would
be an end of all fraudulent assignments.   Every deed would
be upheld by the good faith of the attorney who prepared it,
and as the communications that pass between client and coun-
sel are confidential, it would be impossible to detect the fraud
where any existed.   The relations between the parties are
too intimate and confidential, and too jealously guarded by
the law to admit of the doctrine that the fraud of the client
can be purged by the good faith of the lawyer.   It is true,
as urged by counsel, that under the bankrupt law the fee of
the attorney who acts for a voluntary bankrupt is allowed
even in cases where a discharge is denied to the applicant,
but there is no analogy in the illustration.   The fee is allowed
there for services rendered in court and in accordance with
its rules of procedure.   Here, it is an outside matter with
which the court has no connection and over which it has no
control.   The true analogy is found in a case where a person
has been forced into involuntary bankruptcy, because of the
execution by him of some fraudulent conveyance.   Certainly
in such a case the bankruptcy court would not uphold the con-
veyance for the purpose of paying the lawyer who drafted it,
no matter how innocent he might be in the matter.

The second instruction given for the plaintiffs in attach-
ment was too broad.   By it the jury were told that the instru-
ment should be avoided, if the grantor was induced to make it
by the expectation and hope of subsequent benefits held out to
him by any of the creditors secured by it.   This is erroneous.
An instrument will be avoided which has been induced by the
promise that the grantor shall enjoy some secret benefit in the
thing conveyed, because this is inconsistent with the professed
object of the conveyance, and operates as a fraud upon the
other creditors whose *pro rata* share is thereby diminished.   But
no promise of future benefits unconnected with the property
transferred will avoid the deed, though it constituted one of
the principal inducements to its execution.   It is the reserva-
tion of a benefit in the thing conveyed, not the expectation of
some reward independent of it, of which other creditors can
complain.

We shall not reverse the case because of this erroneous instruction. Averse as we are to affirming verdicts despite erroneous charges, we will not hesitate to do it where, leaving wholly out of view the subject-matter of the erroneous charge, the finding is so plainly right on the other matters involved that any other verdict than the one rendered should be set aside. Such we think is the case before us. If a fraudulent intent on the part of the assignor was not established in this case, it is impossible to see how it is ever to be shown. He started out by deceiving his own lawyers, pretending to seek their advice and put himself in their hands as to what course he should pursue in his financial embarrassments, when it was shown that he had made up his mind weeks beforehand that he would make the assignment. Professedly acting in obedience to his lawyers' instructions, he refused to follow their advice by making a conveyance for the equal benefit of all his creditors, and made one by which he preferred his wife and other near relatives. One of the debts thus preferred was undoubtedly simulated, none of them were shown to be genuine, while all of them were probably fictitious. It is admitted that goods were abstracted from the storehouse after execution of the assignment for the benefit of himself and clerks, the only dispute being as to the amount of these abstractions. All this was wholly independent of and disconnected from the matters alluded to in the erroneous instruction. If the verdict had been in favor of the good faith of the assignment, it would have been the duty of the court below to have set it aside. We therefore affirm it, despite the erroneous instruction.

*Judgment accordingly.*

