Bradley, J.
The plaintiffs are judgment creditors of the assignor, and, having exhausted their remedy at law, charge by this action that the assignment was made with the intent to defraud his creditors. And this rests mainly on the allegation that the preference given by it to the assignor’s son, the defendant, 0. Court Tucker, was collusive between them and made to enable the latter, by means of a pretended or fictitious claim against the assignor, to appropriate a considerable portion of the estate assigned. The assignor when he made the assignment was seized of two farms containing one hundred acres, and fifty acres subject to some mortgage incumbrances. These lands were *121 sold by the assignee, and this son became the purchaser, and as payment of the purchase money he presented to the assignee a verified claim against the assignor about equal in amount to that of the purchase. money, over the encumbrances, and took the assignee’s deed, but to protect the latter in the event that the entire amount of the claim should not be allowed to him on his accounting, this defendant gave to the assignee a bond of indemnity. The assignment specified no amount of the debt due the son, but expressed the preference as “all the debts and liabilities now due and owing or to become due and owing from the party of the first part to the following persons” then naming them amongst whom was this defendant.
The assignment was made January 3, 1884, and on the twenty-first day of the month schedules were made by the assignor, in which he represented his indebtedness to 0. Court Tucker to be $1,589.31 and specified how it arose. And after the sale made by the assignee of the farms, and their purchase by this defendant, he presented to the assignee by way of payment of the purchase money a bill of account, verified by his oath, against the assignor amounting, with interest added, to $2,333.88, which covered the full amount he was required by his purchase to pay to the assignee. The trial court upon this subject found that the assignor and his son, 0. Court Tucker, conspired together to increase the claim of the latter for the purpose of using it “ so fictitiously increased for the purpose of purchasing the two farms—the same was so used; but such conspiracy was subsequent to the making of the assignment and the making and delivery of the schedule;” that the assignment and schedule were made in good faith by the assignor, and with no intent to hinder, delay or defraud his creditors; and that the assignment was valid and effectual.
The finding that the amount of the indebtedness was fictitiously swelled after the assignment and schedule were made, was permitted by the evidence in view of the circumstances appearing, although the father and the son testified to the existence of all the items of liability which went to increase the amount stated in the schedule.
The defendant’s counsel contends that the collusion extended farther back and was in view when the assignment was executed, and produced the entry of the indebtedness in the schedule. Much evidence was given upon this subject, all of which has been carefully examined. In it are found some circumstances which might be treated as casting suspicion upon the fairness or actual existence of the debt mentioned in the schedule, and sufficiently so to justify' the trial court in finding that the debt was not produced by business transactions between the parties to it, but was substantially without legitimate foundation and inserted in the schedule for a purpose not consistent with the duty of the *122 assignor to his creditors; the reference in detail to those circumstances is unnecessary here. But the question became one mainly of the credibility of the testimony of the assignor and his son, whose evidence, if taken as true, supported the claim as a valid one. And while the fact is found in reference to the subsequent transaction and its purpose to create an unduly inflated claim, might well have been treated as reflecting upon and characterizing to some extent the prior act of insertion of indebtedness in the schedule, it cannot be said as matter of law to have that effect, although those witnesses testified with apparently the same degree of certainty to the subsequently added items of claim as to those which constituted the amount in the schedule. The question of the credibility of witnesses is peculiarly for a trial court, in view of the fact that their appearance and the manner in which their testimony is given, are circumstances to be considered, and cannot as well be appreciated on review as by the observation of the tribunal before which they personally appear. It is therefore unusual on review to effectually criticise the conclusions of the trial court founded upon the question of the credibility of witnesses. And in this case there is no attack by evidence other than in that furnished by their own testimony affecting the character of the witnesses for veracity. We cannot say upon the evidence that the trial court was required to find, contrary to the conclusion reached by it, that the evidence established that the debt represented by the schedule as due the son was fictitious or inserted by the assignor pursuant to a design when making his assignment to defraud his creditors. The assignment took effect as such when it was delivered. Warner v. Jaffray, 96 N. Y., 248; Nicoll v. Spowers, 105 N. Y., 1; 6 N. Y. State Rep., 457. This was done and it was recorded January 3, 1884. The burden was upon the plaintiffs to prove the fraudulent intent. And the presumption of good faith to be overcome is no less in such than in other instruments. Crook v. Rindskopf, 105 N. Y , 476; 8 N. Y. State Rep., 66. And to defeat the assignment it must appear that the fraudulent intent of the assignor existed at the time of its execution, and it cannot be affected by subsequent illegal conduct or acts on his part. Shultz v. Hoagland, 85 N. Y., 464.
But the making the schedules, when made by the assignor, may so far be treated as within his contemplation when the assignment was executed as to reflect upon and character ize his purpose in making the assignment, and it is usually entitled to such effect. Talcott v. Hess, 31 Hun. 282; Shultz v Hoagland, 85 N. Y., 464, 468, 469. The matter of increased amount in statement of claim appears to have arisen many months after the assignment and schedule were made, and the court was authorized, as it did, to treat it as an independent transaction and not affecting the act of making them.
*123 The conclusion of the trial court was supported by the evidence.
The judgment should be affirmed.
Barker, P. J., and Haight, J., concur.