PENZEL GROCER CO. V. WILLIAMS.

53    81
54    130

Decided March 22, 1890.

1. *Appointment of receiver—Evasion of statute regulating assignments for benefit of creditors.*

In the absence of the established grounds for equitable interference, a court of chancery has no authority, upon the application of a preferred creditor and with the consent of the assignor and assignee, to place an estate, which has been assigned for the benefit of creditors, into the hands of a receiver to be sold, upon mere general allegations of benefit to be derived therefrom.

2. *Illegal contract—Agreement of receiver to become interested in goods to be sold.*

A receiver cannot, before sale of the goods in his hands, contract with an intending purchaser to become interested therein with him.

3. *Withholding assets in assignment—When fraudulent.*

An assignment for the benefit of creditors purporting to convey all of the property of the assignor except that exempt is vitiated by the intentional withholding of any part of it not exempt.

APPEAL from *Pulaski* Chancery Court.

D. W. CARROLL, Chancellor.

*Sanders & Watkins* and *Cohn & Cohn* for appellants.

1.  Brodie is shown to have been interested as a partner, and the preference to him was a fraud upon creditors. Moreover, Brodie's assets were not turned over to the assignee. 46 Ark., 405.

2.  The assignors withheld firm assets.  46 Ark., 405; Acts of 1887, p. 194.

3.  The assignment was executed for the purpose of evading the assignment laws of the State. Before it was fully consummated and before the assignee took control, it was converted into a receivership, upon a bill that has not a single ground of equitable jurisdiction stated in it, for the purpose of evading the assignment laws.  The appointment of a re-

ceiver ought not to change the rights of attaching creditors. 60 Md., 477; 49 Ark., 117.

This receivership operated as a measure to defeat the assignment law, and for this reason avoids the assignment. 7 Wend., 239; 9 Fed. Rep., 483; 49 Ark., 117, 121.

4. Williams willfully withheld property from the assignment; this was an actual fraud, the effect of which was to avoid the deed *in toto*. 47 Ark., 301, 311; 47 Ark., 367; 37 Ark., 151; Wait, Fraud. Convey., sec. 194.

The like intent affected the assignment in the preference of Brodie. 2 Sandf. Law, 594; 1 Tenn. Chy., 388; Meigs (Tenn.), 328. The contrary can only be true when the intent of the assignor is not the controlling element, as before the act of 1887. 18 Ark., 137; 18 Ark., 172. See Acts 1887, p. 194; 51 Ark., 56.

The statements of Williams were admissible. 3 Wharton (Pa.), 347, 354, 355. In any event to show the fraud of Williams. 46 Ark., 127.

*Ratcliffe & Fletcher* for appellees.

1. Appellants showed no right to intervene. They failed to comply with sec. 323, Mansf. Dig. The mere suing out writs of attachment gave them no standing. The case in 49 Ark., 117, was where an execution had issued on judgment and no such action as that in sec. 323 is required.

2. The evidence relied on to establish a partnership on the part of Brodie is not sufficient. It is not shown that any of the intervening creditors gave credit to Williams & Co. on the faith of any act of Brodie. Even if Brodie had stated he was a partner, this is overcome by proof that he was not. 50 Wis., 491.

3. There was no fraud on the part of B. R. Williams in withholding assets. The land and note were his individual property. The fraud must have been in the assignment itself, and not in some act occurring before or after the as-

signment.  88  Pa.  St.,  167;  Burrill  on  Assignments,  sec. 351 *et seq.;* 68 Wis.,  442.   Both the note and land did not exceed his exemptions, and there was no fraud in withholding them if  Williams so intended  at the time of  the assignment. He had no other individual property. 31 Ark., 554;  52 Ark., 493;  70 Wis.;  276.   See Burrill  on  Assignments, sec.  353 *et seq.;* 2 Bates on Part.,  1117;  53 Ark., 1.

4.   The fact that a complaint was filed  in the  chancery court and receiver appointed on the same day the assignment was made, is no proof of fraud.  The relief asked was proper, and no other court could grant it.   The practice is commendable, especially in view of the speedy, inexpensive and satisfactory  manner  the  property  was  administered.   Trusts arising under  general assignments  are the  objects of  equity jurisdiction.   2 Story, Eq. Jur., sec. 1037.  The effect of the assignment was to place the property  under  the  jurisdiction of  the  chancery court.   1 A. & E. Enc., Law,  p.  872; Mansf. Dig., chap. 8.

The evidence of Penzel that Williams told him Brodie was a partner,  in Brodie's absence,  is  clearly  inadmissible.   29 Ark., 512.

SANDELS ,J.   On July 1, 1887, Williams & Martin bégan a general grocery business at Little Rock,  and continued together until about December 20,  1887,  when Martin, who had  put no money in the  firm,  withdrew.   After that the firm was B. R. Williams & Co.   J. R. Williams became a member about March 1, 1888.

On April 19, 1888, B. R. Williams & Co. made a general assignment of all partnership and individual property (except that exempt from  levy and  sale under  execution) to J. K. Brodie,  preferring,  among others,  Parker & Worthen for $1,000.00 and J. K. Brodie for $3,440.00.

On  the same  day Parker & Worthen  filed  a bill  in the Pulaski chancery court alleging the execution of said deed;

that the property assigned had been "turned over" to the assignee; that plaintiffs were creditors; that there was a large quantity of perishable assets in the stock assigned; that said assignee in administering the trust "would be trammeled by the statute:" and prayed that a receiver be appointed to administer the trust under orders of court.   The assignors and assignee also personally appeared, waived issuance of process and consented that the receiver be appointed.   Accordingly, Brodie was appointed receiver and gave bond in the sum of twelve thousand dollars.   Four days later the receiver filed his inventory of the estate, and the court ordered him to receive bids for five days for the sale of the stock and fixtures. On April 28, 1888, the court accepted the bid of L. W. Mason, it being $4,383.63.   On May 5th, the receiver filed his settlement with the court.   On May 7th, various creditors of B. R. Williams & Co. filed petitions in the chancery court, alleging that they had brought suits at law and caused attachments to be issued, which could not be levied because of the appointment of a receiver; that said assignment was executed with the fraudulent intent to cheat, hinder and delay the creditors: they asked to levy their attachments and have their claims paid out of the fund in court.   Intervenors afterwards filed an amendment, stating the grounds of the charge of fraud:   1st, that Brodie was a partner of B. R. Williams & Co., and that the preferred debt to him was his capital in the business;  2d, that assignors willfully withheld assets; 3d, that the purpose of said assignment was to secure control of their business to Brodie for the interest of assignors and for the purpose of cheating, hindering and delaying creditors.

Upon the trial evidence was introduced to show the partnership of Brodie and the withholding of property, viz: a note of Martin for $174.95 and an equitable interest in some lands paid for by check of the firm shortly before the assignment. The chancery court, on June 9, 1888, decreed that Brodie

was not a partner; that the intervenors be dismissed; and
that the parties preferred in the assignment have distribution
of the fund in court.

In the argument here appellants take broader ground than
in the court below.    It is insisted that the allegations of the
bill filed by Parker & Worthen, showing the goods "turned
over" to the assignee, the circumstances indicating that the
assignee never took an inventory or gave bond to justify such
possession, together with the simultaneous execution of the
deed, filing of the bill, appearance of all the parties, consent
to the appointment of a receiver, show that it was the pur-
pose of assignors to thwart the law relating to assignments
and to conserve their own interests.

1. Evasion of the statute of assignments.

Neither the allegations of the petitions nor proof of mat-
ters prior to, or contemporaneous with, the execution of the
deed are such as warrant a decision of the question argued.
But the practice, which the cause discloses, and which is al-
leged to be prevalent, is not one to be commended.   The
power of the chancery court, *in the absence* of statutory regu-
lations, to supervise the execution of trusts, as also the power
of chancery, *notwithstanding* the statute, to interfere upon
proper allegations of irreparable loss, mismanagement, in-
competency of trustee, etc., has never been questioned.
But to nullify the statute, upon general allegations of benefits
to be derived therefrom, is not sanctioned by law nor the prin-
ciples of equity jurisprudence.   In this case, while the price
obtained for the stock was what might have been fairly ob-
tained, the proceedings illustrate the possibility of abuses.
The bill alleged that the property was in the hands of the
trustee; in argument it is conceded that this was untrue.   It
was alleged that a large portion of the stock was perishable:
a careful examination of the inventory shows that in a stock
of $5,412.88, articles of the total value of $12.65 could be
considered perishable.

The court accepted the bid of L. W. Mason for the

**2. Agreement of receiver to become interested in goods to be sold by him.** goods and fixtures; the receiver paid to himself one-third in cash and became surety on notes for the other two-thirds executed to himself as receiver, and immediately after was announced as a partner of the purchaser in the stock purchased.   Brodie swears that he made the arrangement to take an interest with Mason after the latter bought; while B. R. Williams shows *that, on the day before Mason became the purchaser of the goods*, Brodie in his own handwriting opened the accounts of Brodie & Mason, on page 28 of the old journal of B. R. Williams & Co.   Such privileges have wisely been forbidden to officers of the courts. The fact of the partnership of J. K. Brodie with B. R. Williams & Co. is not proved to the satisfaction of a majority of the court.   The evidence might make him liable to any one who had given credit on the faith of his declarations. Possibly this influenced him to buy the claim of Whittemore & Gordon, after the assignment, for sixty cents on the dollar.

**3. Deed of general assignment—Withholding assets.** The remaining questions relate to the withholding of the note of Martin and the interest in the lands sold after the assignment.   Williams claims that the note, although payable to *B. R. Williams & Co.*, was his individual property, and that he forgot its existence;  and that the land was not intended to be conveyed by the assignment.   The granting clause conveyed *everything*, individual and partnership, real and personal, except his exemptions.    Just after the receiver took charge, Williams asked Martin if he could not take up the note which was not yet due and offered it to him at a specified price.   Martin paid it to him within a month after the assignment.

Just before the assignment, Williams said to L. W. Cherry, who was interested in the land with him: ' ''I transfer that land to you.''   Cherry answered:  ''That does not amount to anything.''   Just after the assignment he began negotiations which resulted in an early sale, and, after trying in vain to get Cherry to convey the land for him, he made the deed himself.

The total nominal assets  were $9,333.65.   The total liabilities were $12,648.19.  The deficit was $3,314.54, besides all capital put in by B. R. and J. R. Williams and all profits on sales.    They were in business altogether nine months and nineteen days.    When asked how he accounted for this, Williams testified: "Well, if you can tell *me*, I will give you $500.00. So far as I know there has been a loss of $5,000.00, loss in merchandise.    What has become of the money is more than I can tell you or know of."

Williams says this land was not  put into the assignment. The  property  was  never  delivered  to the assignee and was never intended to be.    Upon this condition of things, it would appear impossible to reach a conclusion other than that of this court in *Probst v. Welden*.  The assignment  purported to convey all the property of the assignors, real and personal, individual and partnership, except that exempt, and the law pronounces fraudulent the intentional withholding of any part of it.    *Probst v. Welden*, 46 Ark., 405; *Shultz v. Hoogland*, 85 N. Y., 464; *Craft v. Bloom*, 59 Miss., 69. The deed of assignment was therefore  void, and  the chancellor erred in failing to so find.

The decree is reversed, and the cause remanded with directions  to  enter a decree in conformity with this  opinion; and requiring the receiver, out of funds which have  come to his hands from sale of stock and collections, to pay  the several intervenors, upon the proper establishment of their demands, in the  order in which their petitions were filed, the amount of their several claims.