### PEASE v. BATTEN.

(*Supreme Court, General Term, Fifth Department.* April 11, 1890.)

ASSIGNMENT FOR BENEFIT OF CREDITORS—FRAUD—SUBSEQUENT ACTS.

Where the assignor, shortly before making an assignment for benefit of creditors, conveyed his land to his wife through the medium of his son, who was also the assignee, evidence of acts after the assignment on the part of the assignor, his wife, and the assignee, who were charged with conspiring to deprive creditors of the benefit of the assignor's property, indicating a purpose to withhold certain articles from the inventory, is admissible, as tending to show the original intent in making the assignment.

Appeal from circuit court, Niagara county.

Action by Arthur D. Pease against George W. Batten. There was a verdict and judgment for defendant. Plaintiff appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Richard Crowley,* for appellant. *E. C. Hart,* for respondent.

MACOMBER, J. The plaintiff, who is the assignee of his father, A. Douglas Pease, under an assignment for the benefit of creditors, brings this action to recover of the defendant, who is sheriff of Niagara county, the value of certain personal property levied upon by the latter under executions upon several judgments against the assignor recovered in that county. The assignment was delivered on the day of its date, which was the 13th day of February, 1886. A warrant of attachment against the assignor's property was issued on the 6th day of March, 1886, in behalf of Weaver and another, creditors, and subsequently, and on the 13th day of March, 1886, another like attachment was issued to the same officer, in behalf of one Owen Baker. Judgments were subsequently entered and executions were issued in the actions in which such attachments were obtained. It is upon the attachments, judgments, and executions that the defendant justifies the taking of the property in question, and claims therein that the assignment above mentioned was fraudulent and void as to creditors, and was made to hinder and delay them, and that the same, consequently, was an obstruction to the due enforcement of the attachments, judgments, and executions following thereon. The learned counsel for the appellant argues for a new trial wholly upon the admission of evidence given at the trial which he claims to have been incompetent, and which contributed to produce the verdict against the plaintiff. In order to understand the point made by him, it may be necessary briefly to recur to the leading propositions in the case.

The burden undoubtedly was assumed by the defendant to establish, by evidence, the fact pleaded by him, that the assignment of the father to the son was fraudulent and void as to creditors. It was not, however, incumbent upon him to prove this by direct evidence, for the fact may be established as a deduction from other facts naturally and logically indicating its existence. In order to establish the fraudulent intent of the assignor, recourse may be had, in certain cases, to his subsequent acts, in so far as they may serve to characterize the intent of the party at the time of making the assignment. In *Shultz* v. *Hoagland,* 85 N. Y. 464, the court, per FINCH, J., says: "The evidence also must ascertain and establish the assignor's intent at the time of the execution of the instrument. As was said in *Hardmann* v. *Bowen,* 39 N. Y. 200: 'If the assignment was valid in creation, having been honestly and properly executed and delivered, no subsequent illegal acts, either of omission or commission, can in any manner invalidate it.' But this rule must be taken as not intended to deny that such subsequent acts

may reflect light back upon the original intent, and help us to discern that correctly." See, also, *Newlin* v. *Lyon*, 49 N. Y. 661. In the light of these authorities, it is incumbent on us to examine certain exceptions taken to the reception of evidence. While the plaintiff was upon the stand as a witness, the court permitted the counsel for the defendant to ask him questions touching a quantity of furniture in the house of the assignor and his wife, where the plaintiff resided, with a view of showing that it was the purpose of all the parties, in a certain event, to withhold such property from the inventory filed in pursuance of the assignment. It was shown by the evidence of the wife of the assignor that Weaver, a creditor, had been to the house of these parties, and that certain negotiations for a settlement of his claim had been entered upon. The assignee was asked, in substance, whether or not it was the purpose of these parties, including himself, as we necessarily infer from the record, to withhold from the inventory the several items of this furniture, provided a compromise had been effected. It appears that the inventory had actually been made out, but not filed, and that it did not contain these items of property. The evidence had a bearing, as it seems to us, upon the original intent of the assignor in making the assignment, because he seems to have been instrumental in the negotiations with Weaver, and to have been influential in putting in or taking out at will the items of this property from the general inventory of the estate. The part which the wife of the assignor took in any negotiations with the creditor, with a view of turning over to the latter this furniture for his debt, could not, obviously, be of any avail in determining the intent or motive of the assignor himself, unless it was made clear to the court and the jury that she was acting solely in his behalf and as his instrument. The charge against the assignor, his wife, and the assignee is that those three conspired together so to manipulate the property of the assignor as that the same should be lost to his real creditors. Three years before the assignment it is shown that the assignor was possessed of a farm of 150 acres, and that he then began the construction thereon of a valuable house. Shortly before the making of the assignment he conveyed the same to his wife, through the medium of his son, the assignee. There was other evidence of a like character, showing that these three parties were entirely familiar with the scheme of A. Douglas Pease, and that each of them, mother and son, knowingly contributed thereto. Under these circumstances, we think the testimony, showing that there was a determination to withhold the property from the inventory, was competent, as affording some evidence of the original intent of the assignor, and that consequently the exception to the reception of the evidence is not available. It forms an exception to the usual rule that the acts and declarations of an assignor cannot affect the validity of the assignment made for the benefit of creditors, after the same has been executed and the property turned over to the assignee. On the whole, we think the case was pre-eminently one for the consideration of the jury. We have examined the other exceptions taken to the reception of evidence, and do not find in them any error or any question which calls for comment. The judgment and order appealed from should be affirmed. All concur.