PROBST & HILB v. WELDEN ET AL.

1. FRAUDULENT CONVEYANCE: *Withholding property from general assignment.*

Where a failing debtor makes an assignment purporting to convey all his property for the benefit of creditors, but intentionally withholds a valuable part, the assignment is fraudulent and void, as between the assignor and attaching creditors, though the part be withheld for the purpose of applying it to other debts not secured by the assignment, and be actually so applied.

APPEAL from *Logan* Circuit Court.
Hon. R. B. RUTHERFORD, Circuit Judge.

*S. R. Allen,* for appellants.

It will be observed that the words of general conveyance in the deed are restricted by the "schedule thereafter," to be filed by the assignee.

The assignment was not, therefore, full and fair on its face as it was ruled by the court below, to be, in charges two and three, given for defendants. *Minns v. Armstrong, 31 Md., 87; Guerin v. Hunt, 6 Minn., 375.*

As the deed limited the conveyance to such property as the assignee should see fit to inventory, and as the assignors retained a part of the estate, it is clear that such was the intent secretly, though published as a general assignment. It was therefore void, and said second and third instructions for the defendant should not have been given. *Pierson v. Manning, 2 Mich., 445, 456; Roberts on Fraudulent Conveyances, 32; Bump on same, 70.*

The question in this case was one of mixed law and fact, and the strict rule as to not disturbing the verdict of a jury upon the question of "fraudulent intent" does not apply, and the court will set it aside when in other cases it might not. *Vance v. Phillipps, 6 Hill, 433; Cunningham v. Freeborn, 11 Wendall, 240.*

That any fraud, either of the assignee alone, the assignor alone, or both together, done after a valid assignment is made, will not affect the assignment, is conceded. But when it appears that the deed is framed that way, and both parties act in that way under it, the presumption it seems to me should then be conclusive. Although, as shown by the testimony of the assignee, that the assignors made and delivered him an inventory, it is by the deed restricted in its operation to be only as a matter of assistance to the assignee, and not as a part of the conveyance; the conveyance restricting itself to convey such as the

assignee should inventory. This is the only inventory known in the whole transaction. The point is, it seems to us, did the appellees assume to make a full general assignment, and reserve cotton, notes or any other property to be handled by them at their own will and independent of the assignment. If so, the assignment is void.

*Clendenning & Read* and *Geo. W. Williams*, for appellees.

The facts in this case do not constitute fraud, unless they were mere cloaks for concealing property for the assignors. No *actual* fraud existed—the property was parted with, or so set apart before the assignment. The statute is directed, not against the inconsistent possession, but a fraudulent design; not against fair and honest contracts, but conveyances made with intent to delay, hinder or defraud creditors. *Bump Fr. Conv.*, *63; 27 Tex.*, *437; 18 Ark.*, *141, 122; 13 Penn. St.*, *592.*

The deed being fair on its face and extrinsic evidence necessary, to throw light on the intent, the jury were the sole judges of that question. *Bump Fr. Conv.*, *363.* All the law asks is, that the debtor give up all his property to the payment of his debts. *Ib.*, *356.* Even a concealment of part of the assets conveyed does not necessarily invalidate the assignment, but is merely a circumstance tending to prove fraud. *Ib.*, *402.* Nor is it absolutely necessary that a change of possession should accompany the transfer. *Martin v. Ogden*, *41 Ark.*, *186; ib.*, *378.* " Fraud must be proved. Mere conjecture or surmise, however probable or persuasive, is never allowed to establish fraud." *Ib.*, *366; Conway, ex parte*, *4 Ark.*, *302.*

" To render the assignment invalid, when good on its face, the fact of a fraudulent intent when making it must be legitimately found from evidence that will fairly sup-

port the finding, and it must also be an intent to commit a fraud on creditors by making the assignment, and not by some entirely independent act which might, and probably would, have been done precisely as it was, had no assignment been made or contemplated." *Wait Fraud. Con., 421; Livermore v. Northrup, 44 N. Y., 111; Wilson v. Forsyth, 24 Barb. (N. Y.), 128; Shultz v. Hoagland, 85 N. Y., 469.*

The assignors conveyed "all of our and each of our property, real, personal or mixed, wheresoever the same may be situated." If, then, the cotton and notes really belonged to the assignors at the time of the assignment they were conveyed to the assignee, and he could and should have taken possession. But it is claimed by appellants that the assignment, while general in terms, was limited by the schedule filed by the assignors. It is true that if a schedule containing only a part of the property is filed with an assignment which in general terms conveys all the property, but at the same time refers to the schedule as containing all the property, the assignment is limited by it. Such is not this case. The schedule filed by the assignors " as tending to assist the assignee " did not purport to contain the property assigned, nor does the assignment refer to it in any manner so as to restrict the property conveyed to that in it. All of the cases cited for appellants are limited to the schedules by a direct reference to them as containing the property. The statement in the assignment, " the inventory to be filed," refers to the inventory of the assignee upon taking possession. With the making and filing of this the assignors had naught to do. If done imperfectly it was the fault of the assignee; not a fraud of the assignors. The general terms in the assignment had full force and effect to convey all the property of the assignors because the schedule is not referred to in such a way as to restrict.

COCKRILL, C. J. This appeal is prosecuted to reverse a judgment dissolving an attachment. Both parties were mercantile firms. Probst & Hilb brought the suit against the appellees upon an account due them for merchandise, and sued out an order of attachment upon the ground that they had disposed of their property for the purpose of defrauding their creditors. Subsequently the affidavit for attachment was amended, and the appellees were then charged with having shipped a part of their property out of the state, not leaving enough therein to satisfy their debts. No defense was made to the main action, and judgment was rendered for the appellants, but the grounds for attachment being controverted, and a jury called to try that issue, a verdict was returned for the appellees and judgment dissolving the attachment was entered upon it.

The only question at issue was the truth or falsity of the allegations in the affidavit for the attachment. As to the first ground for attaching, the substanntial facts are as follows: Several months prior to the institution of the suit the appellees, being in failing circumstances, made an assignment for the benefit of their creditors. The assignment purported to convey all of the debtors' property of every character, to a trustee for the benefit of the creditors. A schedule or inventory of their property was made out by the debtors and delivered to the trustee with the deed of assignment. It was not referred to in the deed and did not state that it embraced all the property assigned. It was intended as a guide to the assignee in his effort to collect and identify the property. The schedule was made on the night of October 28, 1881, at the time the assignment was finally agreed upon and drawn. The assignment bears date and was delivered the next day. The proof shows that at the time of making out the schedule the debtors owned six bales of cotton, some promissory notes of the face value of $300, or more,

and several hundred dollars in currency, which they intentionally omitted from the schedule and failed to deliver to the assignee.   Their explanation of this was that they intended to use these assets for the purpose of paying off the claims of certain home creditors, and they actually devoted them to that purpose, except the proceeds of two bales of cotton, which they say their agent embezzled. Before the assignment they had agreed to deliver the cotton to one of their creditors in payment of a debt due by the firm.   The settlement was not consummated, but after the assignment the four bales were delivered on account, in pursuance of the agreement.   The notes had been offered to another creditor in payment of his debt a short time before the assignment, but as his debt was already secured he declined to receive them in satisfaction; but when the schedule was made the assignors resolved to withhold them for the purpose of effecting a settlement with the creditor, and subsequently had them pledged to a bank in Fort Smith as collateral security for a loan of money to the creditor to discharge his debt.

The currency that was on hand at the time of making the schedule was delivered to their attorney just before the assignment was consummated, with instructions to carry it to Fort Smith and there pay off a note of the partners upon which a neighbor, whom they desired to protect, was liable as indorser.   The attorney accepted the commission for them and discharged the debt after the assignment was executed.

FRAUDU- LENT AS- SIGNMENT Withhold- ing assets. The assignors do not deny that it was their intention, at the time of making the assignment, to withhold a valuable part of their assets from the assignee and to withdraw that property from the operation of the assignment.   As the assignment purported to convey all their property, and the schedule was in effect an assurance that it embraced, if not

the property conveyed, at least all that the assignors were then mindful of, with nothing concealed or intentionally omitted, the intentional withholding of a valuable part was a manifest deception. The suspicion of creditors would, naturally, be disarmed by the fair appearance of affairs, and they would be induced to rest quiet in the belief that the debtors had, in fact, appropriated all their property to the payment of their debts. The assignment would thus enable the debtors more successfully to convert the property reserved to their own use—it would become a cloak for the accomplishment of their secret designs. "An intentional omission" of property from a schedule under such circumstances, as is well said by the New York court of appeals, "calculated (as it is) to deceive and lull into slumber and inactivity the interest and diligence of the creditor, would plainly argue a fraudulent purpose." *Shiltz v. Hoagland, 85 N. Y., 464; Bank v. Halsey, 57 Barb., 249; Craft v. Bloom, 59 Miss., 69.*

Here the withholding was confessed to be intentional, the design was coeval with and entered into the execution of the assignment, and if the facts were not explained by the debtors, the court or jury trying the issue were not at liberty to withhold the brand of fraud—so far at least as the assignors were concerned.

The only explanation offered was that the assets were reserved with the intention of devoting them to the payment of certain home creditors, who were not preferred by the terms of the assignment. The fact remains, however, that the property was really reserved for the time to the use of the assignors. That, the law inhibits. The preconceived intention, to devote the property to the payment of debts, could not change the legal effect. There was nothing to prevent a change of the purpose at any time; and, moreover, the commission of an act unlawful

in itself is not made legal by the fact that it proceeds from a commendable motive. In *Sparks v. Mack et al., 31 Ark., 666*, it was ruled that a deed fraudulent in its inception could not be made good as to third persons by a subsequent parol agreement. The deed under consideration designated the creditors who were to receive a preference under its operation, and each of the other creditors had a right to infer that when those named were paid, the residue of the assets would be distributed ratably among the others. Besides, if the assignors could administer upon any part of the property they affected to assign, or control it for a purpose not contemplated by the assignment, what would prevent them from secretly enjoying the fruits of it if they so elected? The creditors for whose benefit the reservation was intended had no power or control over it. It was not their property, and when the two bales of cotton were lost, the creditor for whom they were intended did not pretend to assume the loss. It is true it was the duty of the assignee, if he assumed to act under the assignment, to take possession of this property as of the other assets, but that would not affect the intention of the debtors in making the assignment. In contemplation of law, that act was a fraud upon the appellants' rights. It is not necessary for us to determine whether the assignee participated in the fraud, or whether his participation was essential in order to avoid the deed. The only parties concerned in this litigation are the attaching creditors and the assignors in the deed. The real and personal assets assigned by the debtors are attached as their property in this action, but neither the assignee nor any one else has seen fit to intervene and assert a claim to any part of it. The title to the property is therefore not in issue, and we can make no adjudication about it that would be binding on an adverse claimant, if there is one. The

defendants to the action having made the conveyance with a fraudulent intent, the attachment should have been sustained, regardless of any other question. *Enders v. Richards, 33 Mo., 598.*

Upon the second ground the appellants sustained their position without contradiction under the rule announced in *Durr v. Hervey, 44 Ark., 301.*

As the judgment is contrary to the evidence, it must be reversed, and the case remanded for a new trial.