## LAZARUS *v.* CAMDEN NATIONAL BANK.

Opinion delivered October 16, 1897.

EXEMPTION—RESERVATION IN DEED OF ASSIGNMENT.—A deed of assignment for the benefit of creditors is not invalidated by a reservation in general terms of a claim of exemptions.   (Page 326.)

SAME—SELECTION.—Where a grantor in a deed of assignment reserves his exemptions in general terms, he may select the property within a reasonable time, and at a value not exceeding its market value at the time of the assignment; and the selection will be made in time if it does not delay the assignee in the discharge of his duties.   (Page 327.)

ASSIGNMENT—WITHHOLDING ASSETS.—One of the members of a firm, with his co-partner's consent, withdrew a portion of the firm assets for the purpose of paying his individual debts, and at once so expended it.  On the next day the firm made an assignment for the benefit of creditors. *Held* that the portion so withdrawn and expended ceased to be a part of the firm assets, so that the subsequent assignment was not invalidated by reason of the fact that it was withheld therefrom.   (Page 327.)

PARTNERSHIP—WITHDRAWAL OF ASSETS.—Where one of the members of a firm, with his co-partner's consent, withdrew a portion of the firm assets for the purpose of paying his individual debts, and was charged therewith on the books of the firm, the portion so withdrawn ceased to be part of the firm assets, and its omission from a subsequent assignment of the firm assets will not be fraudulent.   (Page 327.)

ASSIGNMENT—WITHHOLDING ASSETS.—A deed of assignment purporting to convey all of a debtor's individual property will be invalidated, as to attaching creditors, by his withholding a valuable part of his property, though done for the purpose of paying his debts.   (Page 327.)

SAME—EFFECT OF FRAUD.—Where an assignor withholds property from his assignment with a fraudulent intent, he cannot subsequently validate the instrument by claiming the property withheld as exempt.   (Page 328.)

SEPARATE ASSIGNMENTS—EFFECT OF FRAUD IN ONE.—Where a deed contains three separate and distinct assignments, one by a firm and the other two by the members thereof, a fraud contained in one of the assignments will not vitiate the other two assignments.   (Page 328.)

ASSIGNMENT—DISCONNECTED FRAUD.—An assignment will not be vitiated by a fraudulent conveyance of the assignor's property made at a time when the assignment was not in contemplation.   (Page 329.)

Appeal from Ouachita Circuit Court.

CHARLES W. SMITH, Judge.

*Geo. W. Murphy* and *Gaughan & Sifford,* for appellants.

Exemptions may be selected after assignment (4 Lawson, Right & Rem., § 96; Burrill, Assignments, § 96; 59 Miss. 80; 15 Mo. App. 544; 85 Mo. 23; 100 Pa. St. 580; 36 Pac. 195; 12 Mich. 180; 19 So. 344; 24 S. E. 103; 64 N. W. 78), even in cases where the assignment purports to carry all of assignor's property, and there is no reservation of exemptions mentioned, 60 Ark. 1; 57 Ark. 333. The withdrawal of funds by each of the appellants, before the assignment, was not fraudulent, because said amounts were charged against their exemptions claimed after assignment. 42 Ark. 423; 54 Ark. 449; 99 U. S. 119. There was no fraud in the sale of the homestead of John Lazarus to his son, Abraham Lazarus, 38 S. W. 898. A valuable part of the property must be withheld to make it fraudulent. "*Lex non curat de minimis.*" The court erred in not giving the fifteenth instruction asked by appellants.

*Smead & Powell, Thornton & Thornton,* and *Geo. H. Sanders,* for appellee.

The assignment is fraudulent and void, because (1) the assignee was given possession before he executed his bond and filed his inventory (24 Fed. 465; *ib.* 460; 53 Ark. 88); (2) the exemptions claimed, and the manner of claiming them, make the assignment void (66 Ia. 240; 54 Ark. 229; 24 Me. 448; Burrill, Assignments, p. 98); (3) appellants both withheld valuable personal property (53 Ark. 81; 54 Ark. 418; 46 Ark. 405; 57 Ark. 331); (4) the transfer of the homestead of John Lazarus to his son, Abraham Lazarus, was fraudulent and void (53 Ark. 81; 54 Ark. 418; 46 Ark. 405).

BATTLE, J. On the 27th day of December, 1894, Lazarus & Levy, a firm composed of John Lazarus and Joe Levy, for the benefit of its creditors, conveyed to W. F. Avera, as assignee, all of their partnership property; and in the same instrument each member of the firm conveyed all of his individual property, except the property reserved in the assignment. The deed was in the following form:

"Know all men by these presents, that we, Lazarus & Levy, a firm composed of John Lazarus and, Joe Levy, being

indebted to sundry parties, a list of whom, as nearly as correct as we can make, with the amounts due them, respectively, is as follows, to-wit: [Here they name them, and the amounts of their claims.] And being desirous that all of our property be appropriated towards the payment of our indebtedness, in consideration of the premises before and hereinafter mentioned, and the sum of one dollar to us paid, do hereby bargain, grant, sell and convey to W. F. Avera, of the city of Camden, Arkansas, and to his successors, in trust, the following described property, to-wit: [Here they describe the property.] To have and to hold all of the above and foregoing lands and tenements, with the appurtenances thereunto belonging, to the said W. F. Avera, in trust, and his successors.

"And I, John Lazarus, being desirous that all individual property owned by me shall be appropriated towards the payment of the debts of said firm and partnership, do hereby bargain, grant, sell and convey unto the said W. F. Avera and his successors, in trust, all the personal property of every kind, character and description owned by me, except such household and kitchen furniture and other property, not to exceed in value the sum of five hundred dollars, allowed as exemptions under the constitution of the state of Arkansas. Also, for the considerations and purposes aforesaid, I hereby grant, bargain, sell and convey unto the said W. F. Avera, and his successors in trust, the following real property, lying and being situated in Ouachita county, Arkansas, to-wit: [Here he describes the property.] Also, all other real property by me owned, and not specifically mentioned herein. It is not intended to convey or attempt to convey, by this instrument, lot No. 3 in Woodward block, fronting on the south side of Washington street, on which I now reside. All the above lots are situated in the city of Camden, Arkansas. To have and to hold all of the above granted lands, lots and premises, with the appurtenances thereunto belonging, unto the said W. F. Avera and his successors, in trust.

"I, Joe Levy, aforesaid, being desirous that all of the debts owing by the said firm of Lazarus & Levy be paid, do hereby bargain, grant, sell and convey unto the said W. F. Avera and his successors, in trust, all of the personal property

of every kind and description, and wherever situated, except such household and kitchen furniture and other property, not to exceed in value the sum of five hundred dollars, allowed as exemptions under the constitution of the state of Arkansas; also the following real property, to-wit: [Here he describes the property.] And all other real estate owned by me, whether herein specifically described or not, except my homestead, upon which I now reside, in the city of Camden, Arkansas. To have and to hold all of said property unto the said W. F. Avera and his successors, in trust, with the appurtenances thereunto belonging.

"All of the above described real and personal property so conveyed to the said W. F. Avera is in trust that he will, after filing the bond and inventory required by law, dispose of the same in the manner and within the time prescribed by the statutes of the state of Arkansas in cases of general assignments for the benefit of creditors, and he is directed so to do. And the said notes, accounts, evidences of debt and choses in action so assigned and transferred to him are in trust, that he will, and he is directed, after filing his bond and inventory as aforesaid, to faithfully and promptly collect the same. The said W. F. Avera is directed, out of the funds coming into his hands as such assignee or trustee: First. To reimburse himself such necessary and legal expenses as may be incurred by him in the execution of this trust, and pay to himself such commission as may be allowed. Second. To pay the following named parties the amounts set opposite their names respectively, to-wit: [Here they give their names and amounts due them.] Tenth. He shall pay to all the other of our creditors the amounts due them, or *pro rata*, should he not have in his hands sufficient funds to pay them in full.

"In testimony whereof we have hereunto set our hands on this 27th day of December, 1894.

[Signed] "LAZARUS & LEVY,

"JOHN LAZARUS,

"JOE LEVY."

This deed was properly acknowledged and filed for record on the 27th of December, 1894. On the 28th of the same month the Camden National Bank sued out an order of attachment against the property of Lazarus & Levy, and caused the

same to be levied on certain real estate conveyed by the deed of asssignment to W. F. Avera for the benefit of their creditors. The homestead of Lazarus was no part of the property attached. The ground of the attachment was that Lazarus & Levy had "fraudulently conveyed their property with the fraudulent intent to defraud their creditors," which was controverted by an affidavit of the defendants. The attachment was sustained by the court, but no reason is given by the court for so doing, except it is stated in the record as follows: " The court, being sufficiently advised as to the law in the case, doth find that Lazarus & Levy, on the 27th of December, 1894, attempted and executed an assignment for the benefit of creditors, and that the parties, Lazarus & Levy, were guilty of fraud in and about the making of said assignment, and were guilty of withholding and reserving certain property which was material to the assignee and to the creditors of the said Lazarus & Levy, and that the attachment should be sustained." But the bank, in its brief on file in this court, contends that the judgment of the court as to the attachment should be affirmed for the following reasons:

"First. Because the assignment was made and delivered, and the possession of the property was delivered, at the same time, and as a part of the same transaction.

"Second. The exemptions claimed in said assignment, and the manner of claiming them, was in such way and manner as made the assignment fraudulent and void.

"Third. The withholding of a large amount of personal property from the assignee, on the part of both Lazarus & Levy, rendered the assignment fraudulent and illegal.

"Fourth. The assignment was void becaue of the fraud of John Lazarus in regard to his homestead."

We will notice these reasons and dispose of them in the order stated.

First. As to the first reason, the evidence shows and the court found that the property assigned was not delivered to the assignee until after his bond and inventory were filed.

Second. Lazarus & Levy had a right to retain all the property they were entitled to hold exempt from seizure or process under the general reservation in their deed of assignment, provided they selected it within a reasonable time, and at a

value not exceeding its market value at the time of the assignment. The selection was in time if it did not delay the assignee in the discharge of his duties. If the reservation had any evil effect whatever, it was to defeat the claim for exemption, and not the deed. So the loss of it by undue laches would not affect the validity of the deed. *Richardson* v. *Marqueze*, 59 Miss. 80, 92; Burrill, Assignments (6 Ed.), p. 98, § 61.

Third. The evidence shows that, on the 26th of December, 1894, the day before the assignment, Levy, with the consent of Lazarus, withdrew from the partnership assets a sum of money amounting to $274 or more, for the purpose of paying his debts. He was charged with the money on the books of the firm. One hundred dollars of this money was withdrawn for the purpose of paying his son, Nathan Levy, a debt which he owed to him. This debt was incurred and paid in the following manner: On leaving home to go to St. Louis to study pharmacy, the son left with his father a part of his money for safe-keeping. It was in a package with his son's name written on it. The father deposited it in a safe of his firm, and the firm used $100 of it. The $100 which the father withdrew from the assets of the partnership were used in replacing this money, and were on the 26th of December, 1894, put in the package left with him, and since then have been held as the son's money. Levy expended the remainder of the $274 on the same day by paying his individual debts. On the 27th of December, 1894, when the deed of assignment was executed, the $274 were no part of the assets of the firm or the property of Lazarus & Levy, and he was not guilty of unlawfully withholding any part of the property assigned.

On the 26th of December, 1894, Lazarus, with the consent of Levy, withdrew from the partnership funds, and thereby converted into his individual property, $540.90 in money, for the purpose of paying his debts. Three hundred and twenty three dollars and ninety-five cents of this money were not used in any manner until after the assignment was made. In January following, Lazarus expended it in paying the creditors for whom it was withheld. On the 18th of April, 1895, after it had ceased to be his property, he gave W. F. Avera, the

assignee, written notice that he claimed it and other property as his exemption.

In *Probst* v. *Welden*, 46 Ark. 405, it was held that "where a failing debtor makes an assignment purporting to convey all his property for the benefit of creditors, but intentionally withholds a valuable part, the assignment is fraudulent and void, as between the assignor and attaching creditors, though the part be withheld for the purpose of applying it to other debts not secured by the assignment, and be actually so applied." In this connection the court said: "Here the withholding was confessed to be intentional, the design was coeval with and entered into the execution of the assignment, and if the facts were not explained by the debtors, the court or jury trying the issues were not at liberty to withhold the brand of fraud,—so far, at least, as the assignors were concerned."

In the case before us, Lazarus withheld the $323.95 for the express purpose of paying certain debts—not as property subject to be selected and claimed by him as a part of his exemptions. On the contrary, it was applied in accordance with the purpose for which it was withheld. According to *Probst* v. *Welden*, the intent of withholding was fraudulent, was coeval with, and entered into, the execution of the assignment. The effort of Lazarus to retrieve his steps by claiming the property withheld as a part of his exemptions was too late. The intent had entered into the assignment, and been executed. He could not then change the manner in which the $323.95 were held, the withholding, the purpose for which it was withheld, and the accomplishment of the purpose. They had passed beyond his control.

But this fraud of Lazarus did not effect the assignments of Lazarus & Levy, and of Levy. Its only effect was to render his individual assignment void as to his creditors. An examination of the said deed will show that it contains three separate assignments. They are kept as separate and distinct in the deed as they would have been had they been made in three several instruments, and each instrument had contained but one assignment. Neither was made dependent upon the others. The result is, they must be treated as three separate assignments;

and the individual assignment of Lazarus should be held fraudulent or void, and the others valid.

The withdrawal of money from the partnership assets did not affect the assignments by the firm. The assignments made by the members of the firm were more than sufficient to compensate for it.

Fourth. Lazarus conveyed his homestead to his son, Abraham Lazarus, on the first of June, 1894. He stated in his assignment that he did not convey it to his assignee, but reserved it. He had a right to reserve it, if it was his property. If the deed to his son was a valid conveyance, the reservation amounted was nothing. If it was fraudulent, it could not affect the assignment, because it was a separate and independent transaction. One was executed on the first of June, 1894, and the other on the 27th of December following. There is no evidence to show that there was any connection between the two, but there is evidence that the assignment was not in contemplation when the conveyance of the homestead was made. The fraud which will vitiate an assignment must be in the assignment. *Bank of Little Rock* v. *Frank*, 63 Ark. 16, 24, and cases cited.

The evidence, however, shows that the lot which constituted the homestead of Lazarus was sold and conveyed by him to his son for a valuable consideration. He was indebted to his son in the sum of $5,000, and conveyed it to him in satisfaction of this debt. The value of the homestead did not exceed that amount. The evidence which showed these facts is undisputed. It is true that Lazarus remained in possession of it after the conveyance, but the presumption of fraud based upon this fact was fully removed by the evidence which showed a *bona fide* sale. *Apperson* v. *Burgett*, 33 Ark. 328.

The judgment of the court sustaining the attachment is, therefore, affirmed as to so much of the property assigned by John Lazarus individually as is attached in this action, and as to other property is reversed.