## BALL-WARREN COMMISSION COMPANY *v.* WILLS.

### Opinion delivered April 30, 1898.

ASSIGNMENT FOR BENEFIT OF CREDITORS—WITHHOLDING ASSETS.—Where an insolvent debtor signed and acknowledged a deed of assignment of all his goods in his storehouse for the benefit of his creditors, and immediately thereafter, and before such deed was delivered, fraudulently removed a valuable part of such goods from the storehouse, the deed is tainted with the fraud. (Page 273.)

Appeal from Pope Circuit Court.

JEREMIAH G. WALLACE, Judge.

#### STATEMENT BY THE COURT.

This was a suit by attachment. W. J. Stowers intervened, and claimed the property attached, under a deed of assignment. The issue raised by the interplea was tried by the court, which found the facts as follows:

"The deed of assignment relied on by the interpleader, W. J. Stowers, as evidence of his title to the property in controversy, was executed on the 24th day of November, 1893, by the defendant, F. J. Wills. The Bank of Morrilton, of which the said Stowers is the cashier, was a large creditor of said F. J. Wills, together with others. The said Wills contemplated making a partial assignment of his property for the benefit of his creditors (said bank and others mentioned in said decree of assignment). About noon on the 24th day of November, 1893, W. L. Moose, attorney of said Wills, called on said W. J. Stowers, advised him of what Wills was about to do, and asked said Stowers if he would accept a deed from said Wills conveying his property to him (Stowers) as assignee for the benefit of the creditors of Wills named in said deed. The said Stowers then and there signified his willingness to accept such deed, and afterwards, about 4 o'clock p. m. of the same day, the said F. J. Wills, intending to complete the title to the property and choses in action mentioned and described in said deed of assignment to W. J. Stowers for the benefit of his creditors, in

the order mentioned in said deed, signed and acknowledged the same before J. W. Massey, a notary public, and left said deed with said Massey, intending that he should deliver the same to said Stowers; but Charles C. Reid, attorney for said Wills, instructed said Massey not to deliver said deed to said Stowers until he (Reid) examined the schedule of the property made part of said deed, to ascertain if they were correct; and, not being notified of any errors in the schedule, said Massey delivered said deed to W. J. Stowers between 7 and 8 o'clock the evening of the same day above mentioned, pursuant to the order of the attorney of F. J. Wills. It was the intention of the said Wills, when he acknowledged and left said deed with said Massey, that the said Massey should deliver it to Stowers, and to pass title *in presenti* to said Stowers to all of his general stock of merchandise and articles of trade in his storehouse at Morrilton, and all other property and choses in action thereby undertaken to be conveyed. After the said Wills had delivered said deed to Massey, intending him (Massey) to deliver it to Stowers, but before Massey actually delivered the deed to Stowers, Wills fraudulently spirited away two or more wagon loads of goods from said storehouse conveyed by said deed, with the intent to delay, cheat and defraud his creditors in the collection of their debts, without the knowledge, consent or connivance of said Stowers, or other of his creditors embraced in and provided for by said deed of assignment. The court further finds the defendant Wills, for some weeks prior to the execution of the deed of assignment, shipped about twenty-two wagon loads of goods to one W. F. Kirkland, at Damascus, Ark., for the fraudulent purpose of cheating and delaying his (defendant's) creditors, but that his fraud in thus shipping his goods was prior to the execution of the deed of assignment, and did not enter into it. [To the finding of the court that the fraud did not enter into the assignment, the plaintiff excepted.] The fraud of Wills in spiriting away the goods from the storehouse after he had signed and acknowledged the deed and left it with J. W. Massey, intending for him to deliver it to Stowers, was a fraud perpetrated by him subsequent to the execution of the deed of assignment, and wholly unconnected with it, and did not in any manner enter into the

assignment, and said deed is valid, and was made for the benefit of *bona fide* creditors, and conveyed the property in said deed described, and for the purposes therein set forth and contained. To the ruling of the court that the fraud of Wills in spiriting away the goods from the storehouse after he had delivered the deed to Massey did not enter into and vitiate the deed of assignment, the plaintiff excepted."

The deed of assignment purported to convey "all goods, wares and merchandise now in the storehouse occupied by me (Wills) in block four (4) fronting at Moose street, and in the warehouse in the rear thereof, all in the town of Morrilton, Ark.;" also certain lands specifically described, and certain notes and accounts described in a schedule attached to the deed.

*Carroll Armstrong* and *J. M. Moore*, for appellant.

An assignment is void when it is part of a scheme to defraud creditors, and is calculated to promote that object. 59 Ark. 562. The presumption of fraud may grow, not alone from the face of the instrument, but from concurrent acts, surrounding circumstances and prior and subsequent conduct of the parties to the instrument. 41 Ark. 192; 46 Ark. 405, 411. The assignment was void because of the intentional withholding of assets. 46 Ark. 405; 53 Ark. 81, 87.

*Moose & Reid* and *Ratcliffe & Fletcher*, for appellees.

The assignment did not defraud any one, and cannot be held fraudulent, whatever may have been the motive. Bump, Fraud. Conv. §§ 171, 333. A fraudulent disposition of property invalidates a subsequent assignment only when the deed of assignment is part of a scheme to defraud creditors, and the provisions of the deed are calculated to promote that object. 4 U. S. App. 72; 59 Ark. 271. This was a specific assignment, and therefore it had no tendency to deceive or defraud creditors, as it might have had, had it purported to be a general assignment. Bump, Fraud. Conv. § 330. The taking of the goods from the stock before or after the delivery of the deed of assignment did not enter into the assigment. 54 Ark. 129; 59 Ark. 503.

Wood, J., (after stating the facts). The natural and, to us, irresistible conclusion to be drawn from the facts, as found by the court, is that the deed of assignment was but a part of a scheme to defraud creditors, and that it was well calculated to subserve that purpose. We do not think the deed itself in this case can properly be divorced from the fraudulent acts which immediately precede and follow its signing and acknowledgement. The deed is but an emanation of that same fraudulent intention and disposition which gave rise to the frauds found by the court. We need not expect to find fraud advertised in the face of a deed of assignment that has been made to defraud creditors, for that would defeat the very purpose of its making, which is, by a fair and honest outward show, to hide the rottenness within, to allay the suspicion of creditors, and thus to forestall inquiry into, and the uprooting of, fraudulent practices. *Probst* v. *Welden,* 46 Ark. 405, 411. Hence it is that the deed itself must always be passed upon in the light of its environments. Concomitant and prior and subsequent acts of fraud, when so closely connected as to contaminate the deed, should be given their legitimate force. *Martin* v. *Ogden,* 41 Ark. 192.

Although the court finds that it was the intention of the assignor, when he acknowledged and left the deed with the notary public, that same should convey title *in presenti* to the assignee, there was in fact no delivery of the deed to the assignee until same passed into his hands at 7 or 8 o'clock p. m. of the day the deed was executed. After the deed was acknowledged (4 o'clock p. m.) and left with the notary for delivery, the agent of the assignor instructed the notary to hold same to give him an opportunity to examine the schedule made part of the deed to see if the same were correct. It thus appears that the assignor reserved and had control over the deed until it was in fact delivered into the hands of the assignee. At the time the deed was acknowledged the assignor represented to the assignee, in the face of it, that it conveyed title to all the stock of goods in the store he was then occupying, and two or three hours later, when the deed was delivered, the store contained some two wagon loads less of goods than it did when the deed had been signed and acknowledged, the said goods having in the mean-

time been abstracted by the assignor without the consent or knowledge of the assignee. This conduct of the assignor was certainly a withholding of assets for his own benefit, which he pretended to be conveying for the benefit of creditors. He pretended that he was conveying to the assignee all the stock that was then in the storehouse, when, in truth and in fact, he was not conveying them all, but withholding a valuable part. And the circumstances lead to no other reasonable inference than that he knew, at the time he signed the deed representing that it conveyed all of a certain stock of goods, that said deed would not in fact convey all of said goods, because he, the assignor, intended that, before the deed should be delivered, a considerable and valuable portion of the goods should be taken away for the assignor's own benefit. This was a gross and palpable fraud, which was contemplated in the making of the assignment, entered into it, and vitiated the whole transaction. The fraud of the assignor avoids the assignment, and although there are deserving creditors who must suffer by reason of the setting aside of the assignment, there are also deserving creditors who will suffer if it is not declared void. So they must all be left where the law places them after the fraudulent assignment is wiped out.

Reversed and remanded, with directions to enter judgment for appellant upon the finding of facts.